IOWA LOAN & TRUST CO. v. FAIRWEATHER et al.

(District Court, S. D. Iowa, C. D. September 16, 1918.)

1. COURTS ⚭284—FEDERAL COURTS—JURISDICTION—APPLICATION OF FEDERAL STATUTE.

Plaintiff's case being founded on the application to the facts of the congressional exemption of Liberty Bonds from taxation, and such application being in dispute, the federal court has jurisdiction.

2. REMOVAL OF CAUSES ⚭3—STATE LEGISLATION.

The jurisdictional facts for removal of a cause to a federal court, claim of exemption under federal statutes from taxation, existing, removal of the litigation, having its basis in attempted state taxation, cannot be defeated by form of judicial review prescribed by the state.

3. TAXATION ⚭7—LIBERTY BONDS—BANK STOCK—STATE STATUTES.

Liberty Bonds, declared exempt from taxation by the statute under which they are issued, are indirectly taxed, in violation thereof and its underlying principles, when owned by a bank, by tax under Code Supp. Iowa 1913, § 1322, providing that its shares shall be assessed to its stockholders, the value thereof to be based on its capital, surplus, and undivided earnings, and its property not to be otherwise assessed; the bonds being considered in determining the value of the stock, and the bank's property being in truth assessed.

4. COURTS ⚭366(2)—FEDERAL COURTS—FOLLOWING STATE DECISIONS—STATE STATUTES.

A federal court is not bound by the construction of statutes of a state by its highest court, where the inquiry is whether they as enforced effect results contrary to inhibition of federal statutes.

At Law. Action by the Iowa Loan & Trust Company against Thomas Fairweather and others. On motion to remand and to dismiss. Denied.

Sargent & Gamble, of Des Moines, Iowa, for plaintiff.
H. W. Byers, of Des Moines, Iowa, for defendants.

WADE, District Judge. The questions presented under the motions to remand and to dismiss are important.

[1] 1. It is contended that the court has no jurisdiction. There is no diversity of citizenship, but the plaintiff contends that the case is one in which it is necessary to construe and apply statutes of the United States. This contention must be sustained.

The plaintiff claims that a certain tax is invalid because it is a tax upon bonds of the United States (Liberty Bonds) which were issued under an act of Congress which specifically provides that such bonds "shall be exempt, both as to the principal and interest, from all taxation," except estate or inheritance taxes. The whole case of the plaintiff is founded in this congressional exemption of these bonds.

Counsel for defendants contend that there is no dispute between the parties as to the law or its meaning, but there is a dispute as to its application; and wherever a right is asserted or exemption claimed, based upon a law of the United States, this court has jurisdiction.

It will not do to say that there is no controversy as to the meaning of the law, while the parties are in court to have determined the applica-

tion of the law to a given state of facts. Cohens v. Virginia, 6 Wheat. 379, 5 L. Ed. 257; Osborn v. Bank, 9 Wheat. 822, 6 L. Ed. 204; Tennessee v. Davis, 100 U. S. 257, 25 L. Ed. 648; McGoon v. Railway (D. C.) 204 Fed. 998. See especially as to jurisdiction, Greene v. Louisville Co., 244 U. S. 499, 37 Sup. Ct. 673, 61 L. Ed. 1280, Ann. Cas. 1917E, 88; Louisville Co. v. Greene, 244 U. S. 522, 37 Sup. Ct. 683, 61 L. Ed. 1291, Ann. Cas. 1917E, 97; Illinois Central Co. v. Greene, 244 U. S. 555, 37 Sup. Ct. 697, 61 L. Ed. 1309; Louisville v. Rice (May 20, 1918) 247 U. S. 201, 38 Sup. Ct. 429, 62 L. Ed. 1071.

[2] 2. On the motion to remand I have so fully expressed myself upon the principles involved in Re Mississippi River Power Co. (D. C.) 241 Fed. 194, and in supplemental opinion in C., M. & St. Paul Ry. Co. v. Drainage District, 253 Fed. 496, that it is not necessary to consider the same in detail.

Parties have a legal and constitutional right to a trial in the courts of the United States in cases involving the construction or application of the Constitution or laws of the United States. It will not do to say that the plaintiff instituted this litigation. As in the Ditch Cases, the litigation has its foundation in an attempt on the part of the taxing authority of the state of Iowa to levy certain taxes which the plaintiff, under the law, would be compelled to pay. In other words, a proceeding was started to take away from the plaintiff certain money for certain purposes. The state prescribed the procedure by which, under the claim of defendants, this was to be done. It authorized an appeal from the board of review, and a trial in court—a judicial proceeding to have the rights of the plaintiff determined. If the plaintiff, asserting a right under the laws of the United States, cannot have that question tried in the courts of the United States, it is because the Legislature, while giving the plaintiff the right to a trial in court, has so prescribed the conditions, or so named the parties, that this right has been denied.

But the Legislature has no such power; having given the plaintiff the right to a trial in court, it could not limit the jurisdiction of the courts of the United States, nor the right of the plaintiff to a trial in such courts, provided the jurisdictional facts exist.

[3] 3. The magnitude of the main question involved in this case cannot be overestimated. The nation is involved in a war which is taxing the resources of the nation in men and in money. The principal means of procuring the money with which to carry on this gigantic struggle is by the issuance of bonds which are sold generally throughout the country to individuals and corporations. More than eight billion dollars worth of these bonds have already been issued, and how many more billions may be necessary before the war is won cannot even be approximated. These bonds are issued at a low rate of interest, but are made attractive to buyers by a specific provision that they "shall be exempt, both as to principal and interest, from all taxation, except estate or inheritance taxes imposed by authority of the United States, or its possessions, or by any state or local taxing authority." This language is simple, definite, and imperative.

It is fundamental that, without any express exemption, it is beyond

the power of the states to impose a tax upon government bonds. The language of Chief Justice Marshall in Weston v. City Council of Charleston, 2 Pet. 449, 7 L. Ed. 481, 488, is conclusive:

"The American people have conferred the power of borrowing money on their government, and, by making that government supreme, have shielded its action, in the exercise of this power, from the action of the local governments. The grant of the power is incompatible with a restraining or controlling power, and the declaration of supremacy is a declaration that no such restricting or controlling power shall be exercised. The right to tax the contract to any extent, when made, must operate upon the power to borrow before it is exercised, and have a sensible influence on the contract. The extent of this influence depends on the will of a distinct government. To any extent, however inconsiderable, it is a burthen on the operations of government. It may be carried to an extent which shall arrest them entirely."

The state can levy no tax in any amount. It is not a question of excessive taxation—it is an absence of power on the part of the state to impede in any manner the functions of the nation.

"The state cannot, by any form of taxation, impose any burden upon any part of the national public debt. The Constitution has conferred upon the government power to borrow money on the credit of the United States, and that power cannot be burdened or impeded, or in any way affected, by the action of any state." Home Savings Bank v. Des Moines, 205 U. S. 503, 27 Sup. Ct. 571, 51 L. Ed. 901.

If a state had the power to impose a tax upon Liberty Bonds, it might impose such tax as to impede the operations of this government in the prosecution of this war. Furthermore, if each state possessed the right to tax Liberty Bonds, the amount of taxation in the different states would vary, and, inasmuch as the tax imposed would affect the value of the bonds, no uniformity of value could be maintained in the different states of the Union.

The plaintiff charges, and upon this motion the statements of the complaint must be accepted as true, that it was, during the assessment period in 1918, the owner of $466,300 of the bonds of the United   States, issued pursuant to the act of Congress and it is contended that a tax has been imposed upon such bonds by the assessor and the board of equalization of the city of Des Moines, contrary to the provisions of the act of Congress. The assessment complained of was made in the usual manner. The plaintiff made a statement to the assessor, as required by section 1322 of the supplement to the Code of Iowa, showing capital stock of the corporation, $500,000; surplus, $100,000; and undivided profits, $383,489.40; and also, pursuant to section 1321 of the supplement to the Code of Iowa, included in said statement "the specific kinds and description thereof (bonds and stocks) exempt from taxation." It appears that, without reference to the claimed exemption of the Liberty Bonds, the assessor and the board of equalization made the assessment, including the value of said bonds in the sum of $466,300 as aforesaid.

The defendants do not claim that the state has any power to impose a tax directly upon these bonds, but justifies the inclusion thereof in the value of property assessed under the contention that this assessment is not an assessment of property of the bank, but is an as-

sessment of the value of the shares owned by the stockholders of the bank.

Since the case of Van Allen v. Assessors, 70 U. S. (3 Wall.) 573, 18 L. Ed. 229, numerous states have, under the guise of imposing taxes upon shares of capital stock, actually assessed the value of government bonds, and in many cases such proceedings have been sustained upon the theory, which is now settled, that the stock of a bank and the property of the bank may be separate subjects of taxation.

The Supreme Court of the United States, in Home Savings Bank v. Des Moines, supra, settled the question that an assessment of a tax upon the property of a bank, including government bonds, is beyond the power of the state. So that the question in this case is narrowed down to the proposition as to whether or not, under the provisions of the statutes of Iowa, the tax nominally levied against the stockholders in this institution is in truth a tax upon the property held by the bank. This question cannot be settled by the mere statement that the tax is upon the stockholders, or upon the value of the stock; but it must be determined by the entire provisions of the enactments of the Legislature.

"Neither state courts nor legislatures, by giving a tax a particular name, or by the use of some form of words, can take away our duty to consider its real nature and effect." C. O. & G. Co. v. Harrison, 235 U. S. 292, 35 Sup. Ct. 27, 59 L. Ed. 234.

"Nor can this inhibition upon the states be evaded by any change in the mode or form of the taxation, provided the same result is effected—that is, an impediment is thereby interposed to the exercise of a power of the United States. That which cannot be accomplished directly, cannot be accomplished indirectly. Through all such attempts the court will look to the end sought to be reached, and, if that would trench upon a power of the government, the law creating it will be set aside, or its enforcement restrained." Home Insurance Co. v. N. Y., 134 U. S. 594, 10 Sup. Ct. 593, 33 L. Ed. 1025.

In the same case the court further says:

"The first step useful in the solution of this question is to ascertain with precision the nature of the tax in controversy, and upon what property it was levied, and that step must be taken by an examination of the taxing law as interpreted by the Supreme Court of the state. A superficial reading of the law would lead to the conclusion that the tax authorized by it is a tax upon the shares of stock. The assessment is expressed to be upon 'shares of stock of state and savings banks and loan and trust companies.' But the true interpretation of the law cannot rest upon a single phrase in it. All its parts must be considered in the manner pursued by this court in New Orleans v. Houston, 119 U. S. 265, 278 [7 Sup. Ct. 198, 30 L. Ed. 411], and Home Insurance Co. v. New York, 134 U. S. 594 [10 Sup. Ct. 593, 33 L. Ed. 1025], with the view of determining the end accomplished by the taxation, and its actual and substantial purpose and effect. We must inquire whether the law really imposes a tax upon the shares of stock as the property of their owners, or merely adopts the value of those shares as the measure of valuation of the property of the corporation, and by that standard taxes that property itself."

So this brings us to a consideration of the statutes of Iowa, and the real purpose and intent and effect of such statutes.

[4] Ordinarily this court is bound by the construction of such statutes by the Supreme Court of Iowa; but it is not so bound in an

inquiry as to whether such statutes, as enforced, effect results contrary to the express language of the statutes of the United States.

Of course no one contends that these bonds are subject to taxation in the hands of private individuals; but, in the very nature of things, large amounts of these bonds must be taken and held by the banks, trust companies, and other corporations. If it is true that the value of these bonds held by banks, trust companies, and corporations may be taxed, then we have the unwarranted situation where the bond in the hands of the private individual is worth more than is the bond in the hands of the corporation, although each must purchase at the same price.

Under the Revision of 1860, § 1598, taxes were levied upon the property of the corporation, and "not upon the individual stockholders." Chapter 60, Acts of the Fifteenth General Assembly, provided:

"Taxes shall be levied upon, and paid by the banks, and not by the individual stockholders."

Chapter 39 of the Acts of the Twenty-Third General Assembly provided:

"All shares of the capital stock of banking associations organized under the general incorporation laws of this state, known as state or commercial banks, shall be assessed to such banks in the city or town wherein located, and not to the individual shareholders."

Under this legislation through many years it was the common practice to assess banks upon values which included government bonds, and such assessments were sustained by the Supreme Court of Iowa in many cases. Savings Bank v. Burlington, 118 Iowa, 84, 91 N. W. 829; National State Bank v. Burlington, 119 Iowa, 696, 94 N. W. 234; First National Bank v. Independence, 123 Iowa, 482, 99 N. W. 142; People's Savings Bank v. City of Des Moines et al. (Iowa) 101 N. W. 867. This latter group of cases, decided together by the Supreme Court of Iowa in 1904, was appealed to the Supreme Court of the United States, and under the title "Home Savings Bank v. Des Moines" was reversed on April 22, 1907. It was there emphatically held that the inclusion of government bonds in the value of "shares of stock," which under the law was then assessed to the bank, was in excess of the power of the state.

In 1911 the Legislature, evidently with the purpose of avoiding the limitation of the state's power, and at the same time getting the same results so far as taxing the value of government bonds was concerned, amended the law (Acts 34th General Assembly, c. 63), by providing that the shares of stock "shall be assessed to the individual stockholders"; but the basis of value for taxing purposes was left the same, and the act provided that "the property of such corporation shall not be otherwise assessed." Under this amendment the present tax is imposed. Counsel assume that the Legislature of Iowa has finally succeeded in getting the legislation in form so as to bring it within what is claimed to be settled in the Van Allen Case.

Under the amendment the bank does in effect what was required before the amendment. The assessor's duties are the same, and the ba-

sis of the assessment valuation consists of exactly the same property. The corporation is required to furnish the statement which forms the basis of the assessment. The bank is required to show "separately" the amount of the capital stock and the surplus and undivided earnings. The same was required under the Code of 1897; *and the important thing is* that the assessor, in fixing the value of the stock for assessment, is required to base it "upon the capital, surplus, and undivided earnings" of the bank, exactly the same as under previous legislation, held void in the Home Savings Bank Case. In fact there is no substantial difference in the statutes except that the result of the acts done is called by another name. Under present legislation, it is the duty of the bank to pay the tax (with the right to compel the stockholders to reimburse), but no more so than it was the duty of the bank to pay the tax under section 1322, held void in the Home Savings Bank Case. In fact there is no substantial change except in form; the substance remains the same.

I am not discussing the well-recognized rule that the stock in a corporation may be, for taxing purposes, entirely separate and distinct from the property of the corporation. I am not referring to legislation in other states in which a tax upon stock of a corporation holding government bonds has been sustained; I am speaking only of the situation under the peculiar laws of Iowa.

It might be said, however, in passing, that many expressions of many courts are based upon what appears to me to be an erroneous idea as to the foundation of the holding in the Van Allen Case, supra. While in that case emphasis is laid upon the distinction between the stock in a corporation and the corporate property, yet the decision rests upon the finding by the court that, under the enactment of Congress providing for the establishment of national banks, Congress had given its consent to the taxation of the value of government bonds in levying a tax upon the shares owned by the stockholders. Justice Chase in the dissenting opinion says:

"We do not understand the majority of the court as asserting that shares of capital invested in national securities could be taxed without authority from Congress. We certainly cannot yield our assent to any such proposition. To do so would, in our judgment, deprive the decisions just cited of all practical value and effect, and make the exemption from state taxation of national securities held by banks as investments of capital wholly unreal and illusory. We will consider the question, therefore, as one of construction.

"The majority of the court hold that the act of Congress, rightly construed, subjects the shares of the national associations to taxation by the states, without regard to investment of a part or the whole of their capital in national securities; and that the act, thus construed, is warranted by the Constitution."

It may be assumed that Congress has the power to consent to the imposition by a state of a tax upon government bonds; but here we are dealing with a case in which Congress has emphatically stated that these bonds shall not be subject to a tax by a state. There was no specific exemption by Congress of the bonds involved in the Van Allen Case.

But returning to the Iowa statutes: Under these statutes, what is taxed? What is taxed in any case? Not the *thing*, but the *value* of

the thing. A tax is assessed against the owner of property, but the tax is based upon, not the property, but the value of the property. A bond may be worth $100 one year, and $50 the next year. The tax is laid each year upon the value at that particular time.

So when the Iowa statute provides that shares of stock shall be assessed to the individual stockholder, and that the value to be assessed shall be measured by the property owned by the bank, the thing assessed is the value of the property of the bank (including these bonds). Here is a scheme for compelling the value of certain property to bear its just share of taxation. What is the property? Money, notes, bonds, accounts—held, it is true, not directly by individuals, but by a corporation, an agency employed by individuals. It happens that in this particular agency the interest of each individual is represented by a share or shares called "stock." The fact that stock is issued to each does not affect the ownership (indirect) of each in the value of the aggregate property. If the parties held the same property for the same purposes, and conducted the same business without incorporation, the interest of each in the aggregate property would be the same; the shareholders in the corporation having the advantage over the partners in the partnership of exemption, complete or limited, from liability for corporate debts; but for taxing purposes, under the rule of equality of burdens (so far as practicable), what difference is there?

The policy of Iowa as to corporations has been not to attempt to levy a tax upon the stock and also upon the property of a corporation. This has been done in some states, and sustained, though confessed to be in the nature of double taxation. At times Iowa has taxed the shares of stock and exempted the corporation, and at times the reverse; but whichever method is employed, can there be any question as to what in fact furnished the basis of the tax? In each case it is the value of the property of the corporation, or the value of that portion of the property designated upon which the tax is laid. Under the Iowa statute held void by the Supreme Court of the United States exactly the same thing furnished the value for taxation which is made the basis of taxation in this case. This is not a case where the statute requires the assessor to assess the market value of stock—the specific things which he must use as the basis of value are fixed by the Legislature.

Not only this, but it affirmatively appears upon the record, as required by the statute, that the value thus to be fixed includes the value of the exempt Liberty Bonds. The statute requires the bank, in making its report, to include in its statement "the specific kinds and description thereof (stocks and bonds) exempt from taxation." What does this provision mean? It might possibly be construed as providing for a deduction of this exempt property; but, in any event, it clearly shows that when the assessor made the assessment he affirmatively took into consideration, as a basis of taxing value, the very bonds which Congress emphatically declares shall not be subject to general taxation by any state.

Not only this, but under the statute "the property of such corporation (the bank in this case) shall not be otherwise assessed." This pro-

vision of the statute cannot be sustained except upon the theory that the assessment provided for, nominally against the shareholders, is in truth a tax upon the property of the corporation.

What power has the Legislature to exempt the property of the bank from taxation in view of the plain provision of the Constitution of Iowa? Section 2, art. 8:

"The property of all corporations for pecuniary profit shall be subject to taxation the same as that of individuals."

In the case of Hawkeye Insurance Co. v. French, 109 Iowa, at 588, 80 N. W. 660, the Supreme Court of Iowa said:

"Reduced to its last analysis, the question is a narrow one, and must find its solution in the construction of the constitutional provision relied upon by appellee. That provision not only requires that the property of corporations be taxed, but that it be subject to taxation the same as that of individuals. This does not mean, of course, that the methods should be identical, but that the property of corporations organized for pecuniary profit should assume the same burdens as are placed upon the property of individuals, and that the taxes should be for the same purposes and objects. It will not do to say that the constitutional provision is a mere grant of power to the Legislature to impose taxes on corporate property. That power would exist in the absence of any constitutional grant. Indeed, it is fundamental that a state Constitution is not a grant of power, but a limitation upon the powers of government."

Only by construing the assessment in this case as in effect being an assessment upon "the property" of this corporation can the legislation be sustained as constitutional. I cannot assume that the intention of the Legislature was to violate this provision of the Constitution. The unity of the property of the corporation and the property of the shareholders as a basis of taxation cannot be evaded; it is the same thing. This is in effect recognized by the Supreme Court of Iowa in the Sioux City Stock Yards Case, 149 Iowa, 5, 127 N. W. 1102.

Let us apply the test presented in the Home Insurance Case, supra. Can there be by the Iowa legislation (as defendants would have it construed) "an impediment interposed to the exercise of the power of the United States" in issuing these bonds? If not, why not? No one will question that a tax upon the value of these bonds in the hands of private individuals would constitute such "impediment." How can it be denied that the same "impediment" exists under the facts in this case?

The Supreme Court of the United States says in this case:

"That which cannot be accomplished directly cannot be accomplished indirectly."

Under the proceedings now before the court, it is clear that the state is doing "indirectly" what it is conceded by counsel it cannot do "directly."

Again quoting from the Home Insurance Case:

"Through all such attempts the court will look to the end sought to be reached, and, if that would trench upon a power of the government, the law creating it will be set aside, or its enforcement restrained."

But what of the holding of the Supreme Court of Iowa in the Head Case, 170 Iowa, 300, 152 N. W. 600, and in the recent case of First

National Bank of Council Bluffs v. City, 161 N. W. 706. This court proceeds with the highest regard for the Supreme Court and for its views in these cases. It must, however, be borne in mind that in these cases the court was not dealing with the assessment of Liberty Bonds, which are by Congress specifically and emphatically declared exempt from taxation; nor does it appear that the question was presented or considered, as to whether or not, under the legislation of Iowa, the tax imposed was (notwithstanding the designation, by the statute, that it was an assessment against the shareholders) in truth an assessment against the property of the bank.

If I were convinced that the assessment in this case was, strictly speaking, an assessment of the value of the shares, entirely separate from an assessment of the property actually owned by the bank, I would reach the same conclusion announced by the Supreme Court of Iowa. I would do so, however, without being at the present time convinced that as to these bonds such conclusion is justified; but I would concur in such conclusion out of the respect which I must have for the opinions of the Supreme Court of Iowa, and opinions of the Supreme Court of the United States, dealing with this question.

I cannot but feel that a tax upon the value of a share of stock, which share has its value wholly or partially because the corporation which issued the stock has purchased and holds bonds of the United States specifically exempted from taxation by the state, is contrary to the letter of the act of Congress and the spirit which underlies such enactment. Especially is it difficult to reconcile such an assessment with such an exemption where. as under the legislation of Iowa, the assessor consciously, knowingly, takes into consideration, in fixing such value, the bonds reported by the corporation to be exempt from taxation.

My holding in this case is that, under the legislation of Iowa, the tax levied in this case is in fact upon the value of the property of the corporation, and in that view it cannot be sustained.

