STATE OF NEBRASKA ET AL., APPELLANTS, v. FIRST NATIONAL BANK ET AL., APPELLEES.

FILED MARCH 27, 1919. No. 20893.

1. **Banks and Banking**: SHARES OF STOCK. Shares of stock in a banking corporation are a distinct entity from the capital stock, or property and assets of the corporation.

2. **Taxation**: BANKS: SHARES OF STOCK. The tax contemplated by section 6343, Rev. St. 1913, as amended, Laws 1915, ch. 108, relating to the taxation of banking corporations, is a tax upon shares of stock in the hands of stockholders, and is not a tax upon the property of the corporation.

3. ———: ———: ———. The words "capital stock," as used in section 6343, *supra*, does not mean capital stock in the aggregate,

but shares of capital stock in the hands of stockholders which are subject to taxation.

4. ———: NATIONAL BANKS. The laws of the United States permit the taxation of shares of national banks in the hands of the shareholders. Taxation of the capital stock of the bank, or other property of the corporation, to the bank itself, is not permitted except in the case of real estate.

5. ———: ———: SHARES OF STOCK: DEDUCTIONS. If a tax is laid upon the property of a banking corporation, in assessing the value of capital stock, a deduction may be made of the value of tax free securities owned by the corporation, but, when the tax is laid upon shares of stock in the hands of the stockholders, no such deduction is required to be made by the laws of this state, or by the laws of the United States.

6. ———: ———: ———: GOVERNMENT OBLIGATIONS. Under the decisions of the supreme court of the United States, that which determines whether a taxing law interferes with the right of the United States to borrow money, is the subject of taxation. A tax on the property of a banking corporation, if the property consists of obligations of the United States, is not permitted, but a tax upon the value of its shares in the hands of the stockholders is not a tax upon the bank, and may be laid. The fact that the value of the United States obligations are considered in ascertaining the value of the shares does not render the tax unlawful.

APPEAL from the district court for Hamilton county: EDWARD E. GOOD, JUDGE. *Reversed.*

. *J. L. Cleary* and *Charles L. Whitney,* for appellants.

*Hainer, Craft & Edgerton* and *T. S. Allen, contra.*

*L. M. Pemberton, amicus curiæ.*

LETTON, J.

In its statement to the assessor of Hamilton county made for the year 1918, the First National Bank of Aurora showed that its capital stock was $50,000, surplus $50,000, and undivided profits of $2,887.51, making a total book value of its shares of $102,887.51. The bank claimed that it was entitled to deduct from this aggregate amount certificates of indebtedness, war stamps and liberty bonds of the United States held by it to the amount of $75,473.77, and real estate belonging to the bank of the value of $6,000.

It alleged that the obligations of the United States were acquired before April 1, 1918, and were exempt from taxation either by state, county or municipal authorities. A list of the stockholders, with the number of shares held by each, the value of each share, and the residence of each shareholder was also included, as required by the statute.

The assessor refused to allow any deduction from the statement on account of the tax exempt obligations of the United States mentioned. On appeal being taken, the county board of equalization also refused to do so. An appeal was taken from this decision to the district court for Hamilton county. The facts were set forth in the petition. The state of Nebraska was allowed to intervene, claiming that the securities involved were subject to taxation for state purposes. A demurrer was filed to the petition on behalf of the state and the county. The United States appearing also intervened by Honorable Thomas S. Allen, district attorney for the district of Nebraska, claiming that the federal securities mentioned are not either directly or indirectly subject to state or local taxation. The district court overruled the several demurrers. The demurrants electing to stand on the demurrer, the court found upon the allegations of the petition that the federal securities involved are wholly exempt from taxation by either state, county or municipal authorities, and ordered that the amount of the same be deducted from the gross amount of the statement made by the bank. From this judgment the state and the county of Hamilton have appealed.

The issues involved in the case are narrow. The first essential inquiry is: What is the *res,* or thing, which is the subject of taxation under the provisions of the statute. If it is the property of the bank which is taxed, it is admitted by the state and county under the decisions in *M'Culloch v. State of Maryland,* 4 Wheat. (U. S.) *316, and *Weston v. City Council of Charleston,* 2 Pet. (U. S.) *449, that the value of the securities

must be deducted from the total assets, because otherwise there would be a direct tax imposed upon obligations which the congress of the United States has declared to be exempt from such impositions.

Prior to the enactment of the present revenue law in 1903, the stockholders of every bank within the state, whether state or national, were assessed and taxed on the value of their shares of stock in the county, town, precinct, village or city where the bank was located, whether the stockholders resided in such places or not. It was required that the bank keep on file a correct list of the names and residences of stockholders, and the number of shares held by each, and it was the duty of the assessor to report to the county clerk a correct list of the names and residences of such stockholders with the number and assessed value of the shares. The county clerk was required to enter the valuation of the shares in the tax lists in the name of the owner, and to extend the tax in the same manner as against other property. It was the duty of the bank and its officers to retain so much of any dividend or dividends belonging to the stockholders as necessary to pay taxes levied on the shares of stock, and, if the tax was not paid, the collector of taxes had the right to sell the shares to pay the same "like other personal property." Comp. St. 1899, ch. 77, art. I, secs. 33-37.

In 1903 the legislature revised the law in regard to assessment and collection of taxes, condensed it, and changed it in several minor respects. As relating to the taxation of banks, the essential element that the assessment should be on the shares of stock was left untouched. Section 6343, Rev. St. 1913, as amended in 1915 (Laws 1915, ch. 108); is the law which specifies the manner in which the shares of stock in such institutions shall be taxed. This section is as follows: "The president, cashier or other accounting officer, of every bank or banking association, loan and trust or investment company, shall, on the first day of April of each year,

make out a statement under oath, showing the number of shares comprising the actual capital stock of such association, bank or company, the name and residence of each stockholder, the number of shares owned by each and the value of the shares on the first day of April, and shall deliver such statement to the proper county assessor. Such capital stock shall thereupon be listed as assessed by him, and return made in all respects the same as similar property belonging to other corporations and individuals. Whenever any such bank, association or company shall have acquired real estate which is assessed separately the assessed value of such real estate, shall be deducted from the valuation of the capital stock of the association or company. Provided mortgages, trust deeds and all other liens or interests in real estate less than a fee title and held as security for loans, shall not be considered or assessed as part of the capital stock for purposes of taxation, and shall not be deducted from the capital, surplus or undivided profits. The county assessor shall determine and settle the true value of each share of stock after an examination of such statement, and in case of a national bank, an examination of the last report called for by the comptroller of the currency; if a state bank, the last report called for by the state banking board; and if the county assessor deem it necessary, he may make an examination of the officers of such bank, association or company, under oath, in determining and fixing the true value of such stock, and shall take into consideration the market value of such stock, if any, and the surplus and undivided profits. Such association, bank or company shall pay the taxes assessed upon its stock and shall have a lien thereon for the same.''

This section first came up for consideration in the case of the *State v. Fleming*, 70 Neb. 523, 536. In this case an attack was made upon the constitutionality of the entire act, and objections were also made to the validity of certain specific provisions. It is said in

the opinion: "There are numerous banks in this state of the class known as national banks. These banks are authorized and chartered by the national government. By the law of their creation, their capital stock cannot be taxed, but the individual shareholders may be taxed upon the value of the shares held." The section is then set forth in the opinion, and the court continues: "The last clause of the section is as follows: 'Such association, bank or company shall pay the taxes assessed upon its stock and shall have a lien thereon for the same.' This clearly contemplates an assessment, not upon the capital stock of the bank itself, but upon the value of the shares held by the stockholders and against the stockholders. This is the only method in which a revenue may be derived from national banks. It is the only procedure authorized by the laws of the national government. It surely cannot be made an objection to this act that other banks and banking associations are taxed in the same manner and method provided for the taxation of national banks. Neither is it an objection that the bank is required to pay the tax due from its shareholders." The court then quoted from *National Bank v. Commonwealth of Kentucky*, 9 Wall. (U. S.) 353, and said: "This, we think, is a full answer to the objection made."

The court was evidently of the opinion that the slight changes in the former act did not affect the design of the statute to lay the tax upon the shares of stock of the individual stockholders, and not upon the property of the bank.

In *First Nat. Bank v. Webster County*, 77 Neb. 815, it is said: "Shares of stock in a national bank are assessed to the individual stockholder at the place where the bank is located, but the bank is liable in the first instance for the payment of the tax, and is given a lien on the stock to secure repayment from the shareholder. The bank is made the agent of the shareholder, not only for the payment of the tax, but for the purpose of listing the stock for taxation."

*State v. Fleming, supra,* was followed in *Nemaha County Bank v. County Board of Equalization, ante,* p. 53. In the opinion in this case it is said: "Shares of stock and capital stock represent different property rights and may be separately assessed. Shares of stock represent a liability of the bank. The words 'capital stock,' in the statute, mean shares of stock which are the unit of taxation. * * * The two interests represent separate property rights, and therefore each is taxable. * * * The corporation's right to resist taxation upon its mortgage securities, contrary to the mortgage tax statute, if it were attempted, is one thing, the right of an individual shareholder to resist taxation on his shares of stock, according to true value, is an altogether different thing. In legal contemplation, it is the shareholder and not the bank which is being taxed."

A consideration of the whole of section 6343, as amended, shows that in the second sentence of the section, the words "such capital stock" refer to the shares of capital stock belonging to the shareholder, and not to the entire capital stock of the bank, or banking association. A full discussion of the terms "capital stock" and "shares of stock" in a similar statute with reference to taxation may be found in *First Nat. Bank v. Moon,* 102 Kan. 334, L. R. A. 1918C, 986, where a like conclusion is reached. *Head v. Board of Review,* 170 Ia., 300.

We see no reason to depart from the construction that the tax provided for is levied upon the shares of stock in the hands of the individual stockholders, and is not levied upon the property of the bank.

Having reached this conclusion, the question remains: Was the bank, on behalf of its stockholders, authorized to deduct the value of the tax exempt securities of the United States from the statement made to the assessor. The question must be considered in the light of the adjudications of the supreme court of the United States.

In *Van Allen v. The Assessors,* 3 Wall. (U. S.) 573, the question was whether a state had the right to tax shareholders in national banks where the capital of the bank was invested in tax free securities of the United States. It was held that a tax of the state of New York upon such shares would have been legal but for a defect in the New York statute, which failed to provide, in accordance with the act of congress, that the tax should "not exceed the rate imposed upon the shares of any of the banks organized under the authority of the state." The defect in the New York law was afterwards remedied by that state, both state and national banks being given the same status as to the taxation of the shares. It is said: "This is familiar law, and will be found in every work that may be opened on the subject of corporations. A striking exemplification may be seen in the case of *The Queen v. Arnaud,* 9 Ad. & E. n. s. *806. The question related to the registry of a ship owned by a corporation. Lord Denman observed: 'It appears to me that the British Corporation is, as such, the sole owner of the ship. The individual members of the corporation are no doubt interested in one sense in the property of the corporation, as they may derive individual benefits from its increase, or loss from its decrease; but in no legal sense are the individual members the owners.'

"The interest of the shareholder entitles him to participate in the net profits earned by the bank in the employment of its capital, during the existence of its charter, in proportion to the number of his shares; and, upon its dissolution or termination, to his proportion of the property that may remain of the corporation after the payment of its debts. This is a distinct, independent interest or property, held by the shareholder like any other property that may belong to him. Now, it is this interest which the act of congress has left subject to taxation by the states, under the limitations prescribed as will be seen on referring to it."

In this case three of the justices dissented but the dissenting judges clearly did not take the view that shares of stock, as distinguishable from the property of the corporation, were not a proper subject of taxation.

This was followed in *Cleveland Trust Co. v. Lander*, 184 U. S. 111, in which case it was held, without dissent, that a tax on the shares of stock in an Ohio trust company, under the laws of Ohio, is not a tax on the property of the corporation, therefore no deduction was allowed for the amount of the capital stock invested in tax free bonds of the United States. See, also, *Bank of Commerce v. Tennessee*, 161 U. S. 134; *Delaware, L. & W. R. Co. v. Commonwealth of Pennsylvania*, 198 U. S. 341-354; *Citizens Nat. Bank v. Commonwealth of Kentucky*, 217 U. S. 443; *Mechanics Nat. Bank v. Baker*, 65 N. J. Law, 113.

In *People v. The Commissioners*, 4 Wall. (U. S.) 244, it appears that the capital of the National Bank of Commerce of New York consisted of 100,000 shares of $100 each, all of which was invested in United States securities exempt from state taxation. In the interim between the decision in *Van Allen v. The Assessors* and the levying of the assessment in this case, the statute had been changed so that a like tax was imposed on the shares in both state and national banks. The commissioners of taxes valued the shares at par and made no deduction on account of the investment of the capital of the bank in tax exempt securities. The action of the commissioners in refusing the deduction was affirmed in the courts of New York. On writ of error the supreme court of the United States affirmed the judgment on the authority of the *Van Allen* case. See, also, note to *Re First Nat. Bank* (25 N. Dak. 635), in L. R. A. 1915C, 386.

Much stress has been placed by the appellee upon the decision in *Home Savings Bank v. City of Des Moines*, 205 U. S. 503, and in *Iowa Loan & Trust Co. v. Fairweather*, 252 Fed. 605. It is insisted that under these

decisions the judgment must be affirmed. It appears, however, that the statute of Iowa, at the time *Home Savings Bank v. City of Des Moines* was decided, made a clear distinction between the taxation of shares of stock in national and state banks. A portion of the Iowa Code, sec. 1322, as it then stood, is as follows: "Shares of stock of national banks shall be assessed to the individual stockholders at the place where the bank is located. Shares of stock of state and savings banks and loan and trust companies shall be assessed to such banks and loan and trust companies, and not to the individual stockholders."

In the *Home Savings Bank* case it is said: "The only claim of violation of federal right which need be considered here is that bonds of the United States have been taxed. It is conceded, and cannot be disputed, that these securities are beyond the taxing power of the state, and the only question, therefore, is whether, in point of fact, the state has taxed them. The first step useful in the solution of this question is to ascertain with precision the nature of the tax in controversy, and upon what property it was levied, and that step must be taken by an examination of the taxing law as interpreted by the supreme court of the state. A superficial reading of the law would lead to the conclusion that the tax authorized by it is a tax upon the shares of stock. The assessment is expressed to be upon 'shares of stock of state and savings banks and loan and trust companies.'"

The court then points out that the shares are to be "assessed to such banks,  *   *   *  and *not to the individual stockholders.*" And it is said: "When this is read, the doubt instantly arises whether the law intended to tax the corporation for property which it does not own, but which on the contrary is owned by the stockholders." It is pointed out that by other sections national bank shares are assessed to the stockholders, the corporations are made liable to pay

Neb. 103.—19.

the tax, and are secured by a lien on the stock and dividends which may be enforced by sale, while state banking corporations have no right of reimbursement, since there are no taxes assessed to the stockholders of such corporations, and it is said that the taxes are not paid by the banks as agents of the stockholders, but as their own debt.

The court also said: "The *Van Allen* case has settled the law that a tax upon the owners of shares of stock in corporations, in respect of that stock, is not a tax upon the United States securities which the corporations own. Accordingly, such taxes have been sustained by this court, whether levied upon the shares of national banks by virtue of the congressional permission or upon shares of state corporations by virtue of the power inherent in the state to tax the shares of such corporations." The court then cites a number of its decisions to that effect, and proceeds: "The theory sustaining these cases is, that the tax was not upon the corporations' holdings of bonds, but on the shareholders' holdings of stock, and an examination of them shows that in every case the tax was assessed upon the property of the shareholders, and not upon the property of the corporation."

Holding that the tax was directly upon the property of the bank, it logically followed that the value of the bonds of the United States owned by the banks should have been deducted in order to ascertain the value of the taxable property of the bank. Three of the judges dissented.

After the decision a change was made in the statute of Iowa, whereby the statute was made to read that shares of stock "shall be assessed to the individual stockholders." Judge Wade based his opinion in the *Fairweather* case on the proposition that this was an attempt to do that indirectly which could not be done directly, and held that in substance the tax was upon the property of the bank, and not upon the shares of stock, and therefore that the deduction of the value of

the bonds of the United States should have been made. This seems to be in line with the views of the dissenting judges in the *Van Allen* case. The case at bar is easily distinguishable from the *Fairweather* case. Long before any question of the deduction of the value of tax exempt securities had arisen, this court had declared that the tax was upon the shares of stock, and not upon the property of the bank, and we are adhering to these decisions.

In commenting on the dissenting opinion of Chief Justice Chase in the *Van Allen* case, and while somewhat questioning the practical effect of the decision in that case, Mr. Justice Moody says in the *Home Savings Bank* case: "But the distinction between a tax upon shareholders and one on the corporate property, although established over dissent, has come to be inextricably mingled with all taxing systems, and cannot be disregarded without bringing them into confusion which would be little short of chaos." We think this is true, and that to hold otherwise could serve no good purpose.

The recent case of the *Bank of California v. Richardson*, 248 U. S. 476, 39 Sup. Ct. Rep. 165, is cited by appellee as sustaining its views, and as indicating a modification of the earlier views of the supreme court of the United States. It seems to us that in the majority opinion the reasons for the conclusion reached are not as clearly stated as in former cases in that court involving similar questions, but the court does not indicate any intention to modify or change its reasoning or its conclusions in the cases hereinbefore cited, or in those cited and quoted from in the case of *Owensboro Nat. Bank v. Owensboro*, 173 U. S. 664, 677, 682, where a review is made of prior decisions. Since the former cases are neither criticized nor disapproved, and since the court cited with approval *Bank of Redemption v. Boston*, 125 U. S. 60, 8 Sup. Ct. Rep. 772, we conclude that it intends to adhere to its former decisions.

To sum up, we are of the opinion that the tax is laid upon the shares of stock, the property of the stockholders, which are a distinct entity from the property of the bank, and that, under the rulings of the supreme court of the United States, the taxing authorities were not required to deduct the value of United States securities belonging to the bank from the statement required to be made to the assessor when ascertaining the value of the shares of stock for the purpose of taxing the owners of such shares. The judgment of the district court is therefore.

REVERSED.

CORNISH, J., not sitting.

SEDGWICK, J., dissenting.

I am not sure that I understand the various decisions of the federal courts bearing upon the question herein involved. Some of these decisions would seem to require the conclusion reached by the majority. That shares of stock of National banks may, under some circumstances, be assessed as such to the shareholders at their full value, although that value includes government bonds, is clearly held in various of those decisions. The reason is that the franchise, the right to do a public banking business, is valuable, and, when privileges of this character are accepted from the state, and the value of such privileges is so mingled with other values that it cannot be determined with certainty whether the state has taxed the values of the exempt government securities, the shareholders cannot complain that the tax is upon exempt property. Our statute requires the assessor to "determine and settle the true value of each share of stock," and to "take into consideration the market value of such stock, if any, and the surplus and undivided profits." Rev. St. 1913, sec. 6343, as amended by Laws 1915, ch. 108. This would seem to bring this case within the federal decisions above referred to, and may be finally so held. But the purpose of the federal statute allowing taxation

of shares of National banks is briefly stated in *Bank of California v. Richardson*, 248 U. S. 476: "Preservation of the taxing power of the several states so as to prevent any impairment thereof from arising from the existence of the national agencies created, to the end that the financial resources engaged in their development might not be withdrawn from the reach of state taxation, but on the contrary that every resource possessed by the banks as national agencies might in substance and effect remain liable to state taxation." Other decisions of that court are to the effect that when it is clear that all values owned by the bank are taxed, including the value of the privileges given by the state, and the value of the government securities are clearly added as a distinct unit of assessment, such assessment of the exempt securities is not necessary for the "preservation of the taxing power of the several states."

In the case at bar there can be no doubt that the exact value of the exempt securities is   added to the otherwise complete valuation of all property and privileges assessed. The result is as clearly a taxation of the government securities as though they were specifically named for taxation. I do not believe that the federal court will uphold this method of obtaining revenue at the expense of the general government.