PETER KIEWIT SONS' CO., A CORPORATION, APPELLEE, V.
COUNTY OF DOUGLAS, APPELLANT.
72 N. W. 2d 415

Filed October 7, 1955.   No. 33697.

*Eugene F. Fitzgerald* and *August Ross,* for appellant.

*Fraser, Connolly, Crofoot & Wenstrand,* for appellee.

*Kennedy, Holland, DeLacy & Svoboda, Robert K. Adams, Edward A. Mullery,* and *Robert L. Berry,* Amici Curiae.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

WENKE, J.

The County of Douglas has appealed to this court from an order of the district court for Douglas County authorizing Peter Kiewit Sons' Company, a Nebraska corporation, to deduct from the value of its intangible class "B" personal property for the year 1953 $5,000,000 of United States government obligations, which it owned on March 10, 1953, in order to determine the value of its shares of stock for taxation purposes.

Appellee is a corporation organized under the laws of this state. In April 1953 it filed a tax return for the year 1953 with the county assessor of that county, Douglas County being the county wherein its principal office and place of business was then located. § 77-705, R. R. S. 1943. In computing the value of its shares of stock for assessment and taxation purposes the appellee deducted from its intangible class "B" personal property obligations of the United States which it owned on March 10, 1953, in the amount of $5,000,000. On July 1, 1953, the board of equalization of Douglas County notified the appellee its intangible class "B" personal

property, which it had returned at $149,515, should be $5,235,585 and that the board intended to raise the assessment accordingly. This notice advised appellee it could appear before the board on July 8, 1953, at 10 a. m. and show cause, if any there be, why said assessment should not be so raised. On July 8, 1953, appellee filed a complaint with the board protesting its action and set forth therein its reasons why the United States government obligations should not be included. The board, on the same day, dismissed appellee's complaint and fixed the valuation of the intangible class "B" personal property of the appellee to include the United States government obligations. From the board's ruling the company appealed to the district court for Douglas County. The district court's ruling has been hereinbefore set forth.

The principal question presented by this appeal is, whether or not, in determining the value of the shares of stock of a domestic corporation for taxation purposes pursuant to the provisions of section 77-706, R. R. S. 1943, the value of United States government obligations owned and held by such corporation can be deducted?

Preliminary to a discussion of the foregoing there are two questions raised by appellee in regard to the jurisdiction of the county board of equalization that should be answered. First, appellee contends no notice of any kind was ever given the owners (the stockholders) of the corporation of any proposed increase on their tax returns as required by section 77-1506, R. R. S. 1943. This statute provides as follows: "The county board of equalization shall adjust assessments for the county by raising and lowering the assessment of any person as to any or all items of his assessment in such manner as to secure the listing and the assessment of property at its actual value. In no case shall the assessment of any person be raised by the board until such person *or his agent* shall be previously notified, if such person *or his*

*agent* be found in the county." (Emphasis ours.)

In regard to banks this court, in First Nat. Bank of Blue Hill v. Webster County, on rehearing, 77 Neb. 815, 113 N. W. 190, held: "National banks are the agents of their stockholders for the purpose of listing their stock in such banks for taxation and paying the tax thereon." In the opinion the court went on to say: "The appellee insists that the entire proceeding is void, because the tax, in case of national banks, is a liability of the shareholder, and not of the banking corporation itself, and because the shareholders were not personally notified of the proceedings before the board; but that is an erroneous interpretation of the federal statute. Shares of stock in a national bank are assessed to the individual stockholder at the place where the bank is located, but the bank is liable in the first instance for the payment of the tax, and is given a lien on the stock to secure repayment from the shareholder. The bank is made the agent of the shareholder, not only for the payment of the tax, but for the purpose of listing the stock for taxation. No other course would be practical, because in many cases, as in this, stockholders in national banks reside in different states and all are not accessible to local assessors. Our statute was enacted with reference to these conditions and is in entire harmony with the federal law." See sections 77-708, 77-709, and 77-710, R. R. S. 1943, as they relate to banks. The same would be true of domestic corporations making returns pursuant to section 77-706, R. R. S. 1943. Notice to the corporation, as was given here, was compliance with the requirements of section 77-1506, R. R. S. 1943.

Appellee's second contention is that the board of equalization of Douglas County had no jurisdiction to act on July 8, 1953, because more than 40 days had elapsed since it first met on May 18, 1953. See § 77-1502, R. S. Supp., 1953. In Fromkin v. State, 158 Neb. 377, 63 N. W. 2d 332, we said of this section: "The provisions of section 77-1502, R. S. Supp., 1953, provide for 'a ses-

sion' of the county board of equalization of not less than 3 nor more than 40 days. The period of days defines the minimum and maximum term in days of a session. The statute contemplates one session to begin and end as provided in the act. Once started the time continues to run. The time limited in the act constitutes the term during which the county board can act for the purposes stated."

However, as to equalizing assessments of undervalued property, which is the situation here, we held in Ewert Implement Co. v. Board of Equalization, 160 Neb. 445, 70 N. W. 2d 397, that: "By section 77-1502, R. S. Supp., 1953, a county board of equalization is authorized to meet in special session at any time after the close of the annual meeting for the purpose of equalizing assessments of omitted and undervalued property."

In view of the foregoing we find the board of equalization of Douglas County had jurisdiction of the parties and authority to act in regard to the subject matter when it did so on July 8, 1953.

Section 77-706, R. R. S. 1943, to which the principal question is directed, at all times here material, provided as follows: "The value of the shares of stock of corporations organized under the laws of this state shall be determined for the purpose of taxation by deducting from the actual value of the paid-up capital stock, surplus and undivided profits of such corporation available for stock dividends, the assessed value of the property of the corporation, both intangible and tangible, listed and taxed in this state and the actual value of the property of the corporation outside of this state. The corporation shall furnish the county assessor or State Tax Commissioner such proof of the value of its property outside of the state as they may require. The corporation shall pay the tax assessed upon its stock or shares, and shall have a lien thereon for the tax paid."

After our opinion in Omaha Nat. Bank v. Jensen, 157 Neb. 22, 58 N. W. 2d 582, this statute was amended

by the 1953 Legislature to include: "The value of the shares of stock of corporations * * * domesticated under the laws of this state * * *." See Laws 1953, c. 267, § 1, p. 880. However, it was not changed insofar as the subject matter here involved is concerned and such change is not here material because appellee is a domestic corporation.

The immunity of obligations of the United States from taxation by or under state, municipal, or local authority is established by federal statute as follows: "Except as otherwise provided by law, all stocks, bonds, Treasury notes, and other obligations of the United States, shall be exempt from taxation by or under State or municipal or local authority." 31 U. S. C. A., § 742, p. 584. The United States Supreme Court has held obligations of the federal government cannot be taxed either directly or indirectly. New Jersey Realty Title Ins. Co. v. Division of Tax Appeals, 338 U. S. 665, 70 S. Ct. 413, 94 L. Ed. 439; Miller v. Milwaukee, 272 U. S. 713, 47 S. Ct. 280, 71 L. Ed. 487; Smith v. Davis, 323 U. S. 111, 65 S. Ct. 157, 89 L. Ed. 107. See, also, State v. First Nat. Bank, 103 Neb. 280, 171 N. W. 912.

However, shares of stock of a corporation in the hands of an individual are a distinct entity from the property of the corporation. See, Allied Contractors, Inc. v. Board of Equalization, 113 Neb. 627, 204 N. W. 374; Nemaha County Bank v. County Board, 103 Neb. 53, 170 N. W. 500; Peters Trust Co. v. Douglas County, 106 Neb. 877, 184 N. W. 812; National Bank v. Commonwealth, 9 Wall. 353, 19 L. Ed. 701; Home Savings Bank v. Des Moines, 205 U. S. 503, 27 S. Ct. 571, 51 L. Ed. 901; Society for Savings v. Bowers, 349 U. S. 143, 75 S. Ct. 607, 99 L. Ed. 557. As stated in Nemaha County Bank v. County Board, supra: "Shares of stock and capital stock represent different property rights and may be separately assessed." Also, in Allied Contractors, Inc. v. Board of Equalization, supra, we said: "In this connection it is well to bear in mind that shares of stock

in the hands of an individual are a distinct entity from the property of the corporation."

In 1866 the United States Supreme Court in Van Allen v. The Assessors, 3 Wall. 573, 18 L. Ed. 229, said: "* * * the tax on the shares is not a tax on the capital of the bank." This holding the same court has sustained, as recently as May 16, 1955, in Society for Savings v. Bowers, *supra*, when it said: "It has been held that a state may impose a tax upon the stockholders' interests in a corporation, measured by corporate asset values, without making any deduction on account of United States securities held by the corporation." The court then went on to explain the reason for its so holding, stating: "This doctrine had its origin in cases involving national bank stock. There, congressional consent to state taxation of the stock of national banks, upon certain conditions, was held, over strong dissent, to permit such taxes to be assessed without the exclusion of federal obligations owned by the banks. Van Allen v. Assessors, 3 Wall. 573 (1865); National Bank v. Commonwealth, 9 Wall. 353 (1869); Des Moines National Bank v. Fairweather, 263 U. S. 103 (1923). This result was reached in part on the theory that the stockholders' interests in a corporation represent a separate property interest from the corporation's ownership of its assets, so that a tax on the stockholders' interests is not a tax on the federal obligations which are included in the corporate property. This rationale has been carried over to cases involving stock of state-created banks, and thus a tax on their shareholders, though measured by corporate assets which include federal obligations, is held not to offend the rule immunizing such obligations from state taxation. Cleveland Trust Co. v. Lander, 184 U. S. 111 (1902). Further, in levying a tax on shareholders a state may require its payment by the corporation, as a collecting agent. Corry v. Mayor and Council, 196 U. S. 466 (1905). The result is that when, as is usually the case, the shareholder tax is measured solely

by corporate asset values, such a tax is difficult to distinguish from a tax imposed upon the corporation itself, so far as the practical impact of the two types of taxes upon corporate-owned federal obligations is concerned. Nevertheless, this exception to the general rule of immunity is firmly embedded in the law.". See, also, National Bank v. Commonwealth, *supra;* Home Savings Bank v. Des Moines, *supra;* Des Moines Nat. Bank v. Fairweather, 263 U. S. 103, 44 S. Ct. 23, 68 L. Ed. 191; Educational Films Corp. v. Ward, 282 U. S. 379, 51 S. Ct. 170, 75 L. Ed. 400, 71 A. L. R. 1226.

As stated in Home Savings Bank v. Des Moines, *supra:* "Although the States may not in any form levy a tax upon United States securities, they may tax, as the property of their owners, the shares of banks and other corporations whose assets consist in whole or in part of such securities, and in valuing the shares for the purposes of taxation it is not necessary to deduct the value of the national securities held by the corporation whose shares are taxed. * * * The right of such taxation rests upon the theory that shares in corporations are property entirely distinct and independent from the property of the corporation. The tax on an individual in respect to his shares in a corporation is not regarded as a tax upon the corporation itself. * * * Accordingly, such taxes have been sustained by this court, whether levied upon the shares of national banks by virtue of the Congressional permission or upon shares of state corporations by virtue of the power inherent in the State to tax the shares of such corporation."

In 1903 the Nebraska Legislature enacted a law in regard to the shares of stock of financial institutions. Laws 1903, c. 73, § 56, p. 403. This law, which is now sections 77-708, 77-709, and 77-710, R. R. S. 1943, contains the following provision in section 77-709: "Such bank, industrial loan and investment company or trust company shall pay the taxes assessed upon its capital stock and have a lien thereon for the same."

On three occasions this court has had to construe this language and in each instance has held it to create an assessment, not upon the capital stock of the institution but upon the value of the shares of stock held by the stockholders thereof. See, State v. Fleming, on rehearing, 70 Neb. 529, 97 N. W. 1063; State v. First Nat. Bank, *supra;* Peters Trust Co. v. Douglas County, *supra.* The latter was affirmed by the United States Supreme Court. See Peters Trust Co. v. Douglas County, 260 U. S. 709, 43 S. Ct. 250, 67 L. Ed. 475. As stated in State v. First Nat. Bank, *supra:* "* * * we are of the opinion that the tax is laid upon the shares of stock, the property of the stockholders, which are a distinct entity from the property of the bank, and that, under the rulings of the supreme court of the United States, the taxing authorities were not required to deduct the value of United States securities belonging to the bank from the statement required to be made to the assessor when ascertaining the value of the shares of stock for the purpose of taxing the owners of such shares."

The basis for this holding is well stated in Citizens State Bank v. Board of Equalization, 110 Neb. 704, 194 N. W. 796:

"Under our law the shares of the bank are the unit of taxation, and each of the individual shares is taxed to the respective shareholders as personal property, and the bank as an entirety, as a corporation, is not taxed at all. By the statute provision is made to obtain a basis for taxing the shareholders and the assessor is required to determine and settle the true value of each share of stock, and such share then forms the unit or basis of taxation. It is taxed as personal property upon its true value, as determined by the assessor, and it matters not the kind of property, taxable or nontaxable, which goes to make up its value.

"It is worthy of note that the shares of stock are taxable to the stockholders even though all or any part of such bank stock may be invested in nontaxable gov-

ernment bonds. It is not a question of double taxation or single taxation or the nontaxation of certain property, a part of which goes to make up the value of the shares of stock."

In 1921 the Nebraska Legislature adopted a comparable statute in regard to fixing the value of the shares of stock of corporations organized under the laws of this state or domestic corporations. Laws 1921, c. 133, art. VIII, § 1, p. 582. At all times herein material it was section 77-706, R. R. S. 1943. It has been hereinbefore set forth. In 1925 this court, in Allied Contractors, Inc. v. Board of Equalization, *supra*, construed this statute in the same manner as it had the statute relating to banking organizations, holding: "In fixing the value of the shares of stock in a domestic corporation under the provisions of section 5884, Comp. St. 1922 (section 77-706, R. R. S. 1943, at all times herein material), no deduction is permitted on account of bonds, warrants or other evidences of indebtedness issued by the state or governmental subdivisions thereof, owned by the corporation."

We think the holdings of these opinions to be correct and have application here.

Appellee raises two further questions with reference to section 77-706, R. R. S. 1943: First, that it does not provide a procedure to foreclose the lien therein given the corporation for any taxes it pays pursuant to the provisions thereof, and second, that the provision creating the lien has been, in effect, repealed by section 21-215, R. R. S. 1943, of the Uniform Stock Transfer Act enacted by the 1941 Legislature. See Laws 1941, c. 42, § 15, p. 220.

As to the first of these appellee asks how a corporation would undertake to enforce its lien since there is no specific provision of any kind in the statute for the enforcement thereof?

As stated in Home Savings Bank v. Des Moines, *supra:* "The tax assessed to shareholders may be re-

.quired by law to be paid in the first instance by the corporations themselves as the debt and in behalf of the shareholder, leaving to the corporation the right to reimbursement for the tax paid from their shareholders, either under some express statutory authority for their recovery or under the general principle of law that one who pays the debt of another at his request can recover the amount from him. National Bank of Commonwealth, 9 Wall. 353; Lionberger v. Rouse, 9 Wall. 468; Aberdeen Bank v. Chehalis County, 166 U. S. 440; Merchants Bank v. Pennsylvania, 167 U. S. 461; Cleveland Trust Company v. Lander, 184 U. S. 111." See, also, State v. Fleming, *supra*.

Courts of equity of this state are open to any corporation paying such tax to enforce its statutory lien against the stockholder and we think this provides the corporation ample means for the recovery thereof.

In 1941 the Legislature enacted into law what is now section 21-215, R. R. S. 1943. This statute provides: "There shall be no lien in favor of a corporation upon the shares represented by a certificate issued by such corporation and there shall be no restriction upon the transfer of shares so represented by virtue of any by-law of such corporation, or otherwise, unless the right of the corporation to such lien or the restriction is stated upon the certificate."

Since this statute relates to the subject of liens on stock the following principle is applicable: "All statutes relating to the same subject are considered parts of an homogeneous system; so, too, all statutes in pari materia must be taken together and construed as if they were one law and effect be given to every provision." In re Application of Hergott, 145 Neb. 100, 15 N. W. 2d 418.

Section 21-215, R. R. S. 1943, does not, either directly or by inference, strike down the specific lien given a domestic corporation that pays the taxes of a shareholder assessed and levied on his or her shares of stock

under and pursuant to the provisions of section 77-706, R. R. S. 1943. At most the only question that could arise is, does a corporation waive the right thereto if no provision to preserve it is contained in any certificate of stock which it has issued on and after the effective date of the act? But that question is not here. It could only arise in case the corporation paid the tax and then sought to enforce it.

The appellee offered evidence to the effect that investment bankers, trust companies, and others dealing in stock of Nebraska corporations have construed section 77-706, R. R. S. 1943, as not creating a liability on the part of the individual stockholder to pay the tax levied thereon when paid by the corporation and have so represented it to investors when selling stock of such corporations. The rule is: "When the court of last resort has judicially construed a statute, the rule permitting recourse to contemporaneous construction of the statute by administrative or executive officials, charged with the enforcement of such a statute, is inapplicable." Omaha Nat. Bank v. Jensen, *supra*. Such would also be true of the custom and practice here sought to be established.

A further question is raised as to whether or not section 77-706, R. R. S. 1943, in view of taxing practices authorized thereunder, could result in discrimination against the tax-exempt character of securities held by domestic Nebraska corporations in the form of government obligations.

In considering this question the following principle has application: "It may be said that this is not the situation presented by the facts in this case, but it must be remembered that the validity of the act does not depend upon what has been done, but upon what the act authorizes and by what may be accomplished under it." Rowe v. Ray, 120 Neb. 118, 231 N. W. 689, 70 A. L. R. 1056.

In Commonwealth v. Curtis Pub. Co., 363 Pa. 299, 69

A. 2d 410, it was held: "If this tax so determined results in discrimination against the securities of the United States it is invalid because discrimination by any state against the United States securities has uniformly been interdicted by the decisions of the United States Supreme Court. * * * As the Supreme Court of the United States has repeatedly pointed out, while a taxing act's character in respect to its being discriminatory against federal securities may be determined by its expressed or implied intention, it may also be determined by its operation and effect. * * * When Pennsylvania exempts from taxation its own securities but taxes, directly or indirectly, the securities of the United States the latter securities are handicapped in their competition with the securities of Pennsylvania, among buyers in the market place. This handicapping is by implication proscribed by the Constitution of the United States."

Although we have already set forth in full section 77-706, R. R. S. 1943, we shall again set out that part of the statute which is pertinent to the question here raised. In this respect it provides: "The value of the shares of stock * * * shall be determined for the purpose of taxation by deducting from the actual value of the paid-up capital stock, surplus and undivided profits of such corporation available for stock dividends, the assessed value of the property of the corporation, both intangible and tangible, listed and taxed in this state * * *."

The reason why the Legislature so provided becomes evident when we consider the policy of the state in regard to taxation. In Peters Trust Co. v. Douglas County, 113 Neb. 596, 203 N. W. 1001, we said: "It is the settled policy of our law to guard against double taxation, even though such taxation be not unconstitutional." See, also, Nye-Schneider-Fowler Co. v. Boone County, 102 Neb. 742, 169 N. W. 436; Citizens State Bank v. Board of Equalization, *supra*.

Based on this principle we have construed the fore-

going statute as follows: "It is the policy of the state to avoid, as far as possible, double taxation. The legislature, in recognition of this principle, has provided that the value of the shares of stock in a domestic corporation for taxation purposes shall be determined by deducting from the value of the capital stock, surplus and undivided profits, the value of property owned by the corporation, both tangible and intangible, which is 'listed and taxed' in this state against the corporation, as well as the actual value of the property of the corporation outside of the state." Allied Contractors, Inc. v. Board of Equalization, *supra*.

"What is meant by the words 'the assessed value of the property of the corporation, both intangible and tangible, listed and taxed in this state?' * * * It seems to us, however, that this construction leaves out of view the purpose of the legislature, apparent upon the face of the act and deducible from its language, viz., to protect the corporation and shareholders, in the assessment of the capital stock, from being taxed twice upon its property; and where it appears that such double taxation will result unless deduction is made, it will be allowed." Kelkenny Realty Co. v. Douglas County, 116 Neb. 796, 219 N. W. 140.

It was held in Schuylkill Trust Co. v. Pennsylvania, 296 U. S. 113, 56 S. Ct. 31, 80 L. Ed. 91, that permitting a deduction in the determination of the value of shares of stock of a corporation so much thereof as represented shares of corporations which had already paid a tax thereon or, under the policy of the Commonwealth of Pennsylvania, had been exempted therefrom, resulted in discrimination. The court therein, in discussing the question, stated: "The point is that the State has chosen a portion only of the net assets of the corporation as a measure of the tax, whether the exaction be from the company or its shareholders. The State has exempted certain assets on the theory that to measure the tax in part by their value would in effect be to tax them twice.

If to measure the shareholder's tax by inclusion of these taxed or exempted securities found amongst the company's assets would be to tax the shareholder in virtue of the company's ownership of those securities, it seems clear that to refuse to exempt United States securities from the measure of the tax is to lay a tax reckoned upon their value. To put it otherwise, if to exclude securities already taxed or exempted from tax pursuant to the policy of the Commonwealth avoids double taxation, to include United States securities in the measure of the tax seems inevitably to increase the burden of the tax by reason of their ownership. If the burden of the tax be lifted in respect to some securities (as it is by confession from those issued by certain Pennsylvania corporations) it must necessarily fall on the remaining securities owned by the company."

Then in Schuylkill Trust Co. v. Pennsylvania, 302 U. S. 506, 58 S. Ct. 295, 82 L. Ed. 392, involving the same situation, the court said: "We held further that the exclusion from the base of a proportion of the value of tax exempt shares of Pennsylvania corporations, and the refusal of like treatment of federal securities, operated as an unconstitutional discrimination against the latter."

While in Schuylkill Trust Co. v. Pennsylvania, 296 U. S. 113, 56 S. Ct. 31, 80 L. Ed. 91, only stock of domestic corporations was involved, here, by the language of our statute, the deductions include all intangible property owned by the corporation and taxed to it, which would include stock owned by it in other domestic corporations. As stated in Commonwealth v. Schuylkill, 327 Pa. 127, 193 A. 638: "But because of the statutory deductions of the value of stocks already taxed or relieved from taxation by the state, no similar deduction being provided for in the case of United States securities, it 'is impossible to avoid the conclusion' that the law works a discrimination against such securities."

And, as stated in Fidelity & Guaranty Fire Corp. v.

Tax Comm., 172 Md. 652, 193 A. 164: "The quoted portion of the Schuylkill opinion seems to declare that a state, in valuing the stock of a corporation for purposes of taxation, cannot exempt any of its securities, whether tax exempt or not, when amongst its assets are national bank stocks or federal securities, unless they also are exempted, in which event the local tax exempt property or securities would also be exempted. In other words, the federal policy seems to be with respect to the taxing of shares in domestic corporations owning national bank shares, federal securities, tax exempt or already taxed shares, to tax all or omit the national bank stocks and federal securities."

Under these holdings we can come to no other conclusion than that the method authorized for valuing the shares of stock of domestic corporations under section 77-706, R. R. S. 1943, results in discrimination against United States obligations and that the trial court was correct in so holding. However we call attention to the fact that the 1955 Legislature has authorized such deduction. See Laws 1955, c. 292, § 1, p. 924. Therein it is provided that: "The value of the shares of stock of corporations, organized or domesticated under the laws of this state, shall be determined for the purpose of taxation by deducting from the actual value of the paid-up capital stock, surplus, and undivided profits of such corporation available for stock dividends, * * * the actual value of bonds or other obligations issued by the United States of America or any of its agencies or instrumentalities, * * *."

AFFIRMED.