INTERNATIONAL HARVESTER COMPANY, APPELLEE, V. THE COUNTY OF DOUGLAS, NEBRASKA ET AL., APPELLANTS,

20 N. W. 2d 620

FILED NOVEMBER 16, 1945. Nos. 31948, 31949, 31950.

*Kelso Morgan* and *Joseph D. Houston,* for appellants.

*Ellick, Fitzgerald & Smith* and *Seymour L. Smith,* for appellee.

Heard before SIMMONS, C. J., PAINE, CARTER, MESSMORE, YEAGER, and CHAPPELL, JJ.

SIMMONS, C. J.

Plaintiff in this action sued to recover taxes paid. Defendants answered separately. Plaintiff moved for judgments on the pleadings. The trial court sustained the motions and entered judgments as prayed. Defendants appeal. The appeals are consolidated here. We reverse the judgment of the trial court.

The rule is: "A motion for judgment on the pleadings, like a demurrer, admits the truth of all well-pleaded facts in the pleadings of the opposing party, together with all reasonable inferences to be drawn therefrom. The party moving for judgment on the pleadings necessarily admits, for the purposes of the motion, the untruth of his own allegations in so far as they have been controverted." Brown v. Royal Highlanders, 140 Neb. 54, 299 N. W. 467.

In view of the above rule we state a summary of the facts material here, as gathered from the pleadings.

Plaintiff is a corporation, organized under the laws of New Jersey with its principal place of business in Chicago, Illinois. It does business in Nebraska. It has branch offices at Omaha, Lincoln, and Grand Island for the purpose of selling machinery and parts at wholesale to dealers, and motor trucks and parts at both wholesale and retail.

Defendants are the County of Douglas, the City of Omaha, and the School District of Omaha.

In May 1942, plaintiff filed a personal property return of its taxable property on the prescribed foreign corporations

form. This return was signed "International Harvester Co. By W. H. Bedford, Branch Manager Agent." It there listed class A intangible property in the amount of $1,931. It listed class B intangible property, notes secured and unsecured, except notes secured by mortgages on real estate situated in this state, in the amount of $288,000; and book accounts, open accounts, judgments, choses in action, contracts for cash, labor or any other valuable thing whether due or about to become due, in the amount of $85,000. Thereafter the county assessor raised the value of said class B intangibles to $500,000. Plaintiff then filed its complaint with the board of equalization, claiming that its personal property was assessed too high and asking that the assessment be reviewed. The board reduced the assessment to the amount originally returned. No appeal was taken from that action. On that basis plaintiff was taxed $2,984. Plaintiff on February 4, 1943, paid the tax with interest, without protest or notice of protest. The tax moneys so paid were allocated one-sixth to the state general fund, one-sixth to the county general fund, one-third to the city general fund, and one-third to the school district general fund.

On February 24, 1943, plaintiff, pursuant to section 77-1923, Comp. St. 1929, subdivision SECOND, filed a demand upon the county treasurer and ex officio treasurer of the other defendants demanding the repayment of the sums allocated to said defendants. Plaintiff stated in the demand that it had paid the tax in all respects as though it were legal and valid, and claimed the tax was null and void for the reason that plaintiff was a foreign corporation, did not reside in Nebraska, and was not liable to taxation in Nebraska for any class B intangible property whatsoever. The payment demanded was refused and this suit was instituted.

The secured and unsecured notes and the accounts receivable were all payable in this state; they arose out of the sale of plaintiff's property in this state; they were taken, accepted, and kept at all times in Nebraska, and were subject to collection in this state and were in this state on April 1, 1942, in the custody or control of plaintiff's agent and

branch manager in his representative capacity. Among said notes were conditional sales contracts and chattel mortgages which were recorded in the counties of this state. Judgments included in the return were rendered by the courts of Nebraska. The cash in the bank so returned was the working fund for operating expenses and was subject to withdrawal by plaintiff's branch manager in Omaha.

The defendants contend that the intangible property so acquired and held had a taxable situs in Douglas County on April 1, 1942, and was liable for taxation under the provisions of section 77-703, Comp. St. Supp., 1941 (now sections 77-713 and 77-714, R. S. 1943). It further was contended that the form upon which plaintiff returned said property was one which had been in use since 1929, and that plaintiff and other foreign corporations had for a number of years paid taxes on property so held and returned, evidencing an administrative construction of the statute.

It was contended that plaintiff could not recover said taxes in an independent action, but was required to proceed under the provisions of subdivision FIRST of section 77-1923, Comp. St. 1929. To these the county adds the contention that the plaintiff, having claimed and received relief from the board of equalization, and not having appealed the value, it is now res adjudicata and plaintiff is estopped from inquiring into the taxable value of said intangible property.

By their briefs, the parties here treat these various contentions as applicable to all the defendants.

Defendants, as appellants, contend that the trial court erred (1) in holding that the plaintiff had pursued the proper remedy, (2) in holding that the matter had not been finally determined when plaintiff failed to appeal from the action of the board of equalization, (3) in holding that the intangible property involved here was not assessable, and (4) was not subject to taxation in Nebraska.

We first take up the procedural question. The statute in effect when this action was brought was section 77-1923, Comp. St. 1929. Subdivision FIRST of that section provides that if a person claims a tax or any part thereof to be

invalid for the reason "that the property upon which it was levied was not liable to taxation," or that the property had been twice assessed in the same year and taxes paid thereon, he could pay the taxes under protest and receive a receipt showing payment under protest and the grounds therefor. It provided that the money so paid should be held by the county treasurer, subject to the order of the county board. The statute then provided for the filing of a statement, for a hearing before the board, and for an order refunding the money if it should be found that the property was not liable for taxation, or that it had been twice assessed in the same year and the taxes paid. If it was found that the grounds of the protest were not true, then the board was to order the disposal of the money as though not paid under protest. It contained a provision for an appeal and directions in that event.

Defendants claim that plaintiff should have proceeded under subdivision FIRST, and that not having paid under protest and not having proceeded as therein provided, this action cannot be maintained.

Plaintiff claims that it properly proceeded under subdivision SECOND, which provides that if any person claim the tax to be invalid for the reason that "it was levied or assessed for an illegal or unauthorized purpose, or for any other reason except as hereinbefore set forth," and he shall have paid the same as though it were legal and valid, he may then demand payment from the treasurer of the state or subdivision for whose benefit, or under whose authority, or by whose request it was levied, and if repayment is not made, he may sue.

Obviously, the "for any other reason except as hereinbefore set forth" refers to the provisions in subdivision FIRST that the property is not liable for taxation or has been twice assessed in the same year. It is so stated in sections 77-1729 and 77-1735, R. S. 1943.

The claim for a refund, which plaintiff makes a part of its petition by reference, is based upon the proposition that plaintiff is a foreign corporation, not resident in this state,

and its intangible property "is not liable to taxation" in this state. Thus plaintiff clearly has anchored its case within the provisions of subdivision FIRST, and without the provisions of subdivision SECOND.

Both subdivisions deal with a claim that a tax is invalid. The remedy available to the taxpayer under subdivision FIRST depends upon a classification of his property, is it liable to taxation, or was it twice assessed in the same year and taxes paid thereon. The remedy available under subdivision SECOND depends upon a classification of the tax, was it levied or assessed for an illegal or unauthorized purpose, or is it invalid for any other reason than that the property was not liable to taxation, or had been twice assessed in the same year and taxes paid. The procedure is fixed by a determination of the basis of the claimed defect in the tax. This distinction was directly and fully stated in Chicago, B. & Q. R. Co. v. Nemaha County, 50 Neb. 393, 69 N. W. 958. It runs through all our decisions construing this statute. "In a sense property is not liable for taxation for an unauthorized purpose, but the statute clearly distinguishes between such levies and levies upon property not taxable for any purpose, and has provided distinct remedies for each situation." Lennemann v. Harlan County, 110 Neb. 742, 194 N. W. 814.

The facts of plaintiff's case, as well as the exact language of its claim, bring it within the terms of subdivision FIRST of the statute. We are of the opinion that plaintiff has mistaken its remedy and that the trial court erred in its holding.

This conclusion makes unnecessary a decision with reference to the other assignments. However, in view of an apparent erroneous construction of our recent decision in Massey-Harris Co. v. Douglas County, 143 Neb. 547, 10 N. W. 2d 346, and the importance of the question to the public revenues, we decide the principal question: Is the plaintiff's property involved in this action liable to taxation in this state?

The plaintiff makes the forthright assertion that class B intangible property of a foreign corporation is not taxable in Nebraska.

The Constitution of 1875 provided that "The Legislature shall provide such revenue as may be needful, by levying a tax by valuation, so that every person and corporation shall pay a tax in proportion to the value of his, her or its property and franchises, the value to be ascertained in such manner as the Legislature shall direct, * * * ." Const. 1875, art. IX, sec. 1. It provided in section 2 of article IX for certain exemptions, none of which applies to the case at bar. It further provided in section 4 of the same article as follows: "The Legislature shall have no power to release or discharge any county, city, township, town or district whatever, or the inhabitants thereof, or any corporation, or the property therein, from their or its proportionate share of taxes to be levied for state purposes, or due any municipal corporation, nor shall commutation for such taxes be authorized in any form whatever."

The Constitution was amended in 1920 to provide: "The necessary revenue of the state and its governmental subdivisions shall be raised by taxation in such manner as the Legislature may direct; but taxes shall be levied by valuation uniformly and proportionately upon all tangible property and franchises, and taxes uniform as to class may be levied by valuation upon all other property. Taxes, other than property taxes, may be authorized by law. Existing revenue laws shall continue in effect until changed by the Legislature." Const. 1920, art. VIII, sec. 1.

Following section 2, article IX of the 1875 Constitution, the 1920 amendments provided for the exemption of certain property (Const. 1920, art. VIII, sec. 2). It exempted from taxation the property of the state and its governmental subdivisions and household goods' of the value of $200. It authorized the Legislature to exempt certain other property, not material here. It then provided: "No property shall be exempt from taxation except as provided in this section."

It will be noted that under the 1875 constitutional provision the Legislature was required to provide revenue by levying a tax so that "every person and corporation" should pay a tax based on the valuation of "property and fran-

chises." Const. 1875, art. IX, sec. 1. In Aachen & Munich Fire Ins. Co. v. City of Omaha, 72 Neb. 518, 101 N. W. 3, we said: "The law knows no distinction between persons or corporations, or between foreign or domestic corporations, under the powers granted by this clause." By the 1920 amendment (sec. 1, art. VIII) taxes were required to be levied by valuation upon all "tangible property and franchises." It further was provided that taxes uniform as to class might be levied by valuation upon "all other property."

A reading of the proceedings of the 1920 Constitutional Convention clearly indicates that the framers of these amendments, by the use of the term "other property," had reference to and meant to include therein intangible property; that it was their purpose so to draft the constitutional provisions that all property in the state would be subject to taxation and be taxed. They recognized that intangibles were then taxable but not being reported for taxation. In an address to the people explaining the proposed amendment, the Constitutional Convention said: "The purpose of the amendment is to enable the Legislature to make ample provision for reaching a large amount of property that now escapes taxation and provide for raising revenue by other methods in addition to property taxes, thereby more equitably distributing the burdens of taxation." 2 Constitutional Convention Proceedings, 1919-1920, p. 2847. They provided for a separate classification as to intangibles in order that this class of property might be dealt with separately, brought out of hiding and placed on the tax rolls. The permissive "may be levied" provision was to enable the Legislature to avoid double taxation. They recognized that if the new constitutional sections distinguishing between tangibles and intangibles were adopted, and before the Legislature acted pursuant to the new provisions, a question might arise as to whether intangibles were then taxable. To make certain that intangibles would not be exempt they placed the provision in section 2 above quoted that no property shall be exempt from taxation, and, trusting the Legislature to enact the proper legislation to carry out the constitutional

intent, they provided that existing revenue laws should continue in effect until changed by the Legislature, so that until so changed, intangible property would continue to be taxable, the same as theretofore. All intangibles in this state were to be taxed the same as tangibles until legislation dealing therewith should be subsequently adopted.

As we read these provisions, in the light of the proceedings and debates of the convention, the Legislature was not authorized to exempt intangible property from taxation, but was authorized to levy taxes thereon uniform as to class and by valuation. The underlying purpose was to empower the Legislature to tax intangibles in such a way that more of them would appear on the tax rolls. We find no purpose to exempt intangibles from taxation. The constitutional provisions negative any such a purpose or power. There is nothing in the constitutional provisions which gives comfort or help to plaintiff's major premise in this action.

What then were the revenue laws of 1920 which were continued in effect until changed by the Legislature?

In 1869, the Legislature passed an act to provide a system of revenue. Laws 1869, p. 179; G. S. 1873, ch. 66. A second act was passed in 1879. Laws 1879, p. 273; Comp. St. 1881, ch. 77. A third general act was passed in 1903. Laws 1903, ch. 73, p. 389; Comp. St. 1905, ch. 77. These acts were amended at different times.

The act of 1869 exempted certain property from taxation. Laws 1869, s. 1, p. 179. It then provided: "All other property, real and personal, within this State, is subject to taxation * * * ." Laws 1869, s. 2, p. 180. It was enacted that this provision intended to embrace, among other things, "money, whether in possession or on deposit, and including bank bills, money, property or labor due from solvent debtors on contract or in judgment, and whether within this State or not; mortgages and other securities, and accounts bearing interest; * * * all moneys used in merchandizing; * * * ." Laws 1869, s. 2, p. 180.

The act of 1879 provided that all real and personal property in this state (not exempted) was to be assessed and

taxed. It further provided: "All moneys, credits, bonds, or stocks, or other investments, the shares of stock of incorporated companies and associations, and all other personal property, including property in transitu to or from this state, used, held, owned or controlled by persons residing in this state" shall be assessed and taxed. Laws 1879, subd. 2 of s. 1, p. 276. Exemptions consistent with section 2, article IX of the 1875 Constitution, were provided.

The act of 1903 defined property to include "every kind of property, tangible or intangible, subject to ownership." Laws 1903, ch. 73, s. 3, p. 389. It also provided: "All property in this state not expressly exempt therefrom, shall be subject to taxation, * * * ." Laws 1903, ch. 73, s. 12, p. 390. The exemptions provided were likewise consistent with the 1875 constitutional provision. Thus stood the statutory law of this state when the 1920 constitutional provision was adopted.

After the adoption of the 1920 constitutional provisions, the Legislature met and enacted an act relating to public revenue. Laws 1921, ch. 133, p. 545. It provided: "The word 'property' includes every kind of property, tangible or intangible, subject to ownership." Laws 1921, ch. 133, art. I, s. 1, p. 545. This is an exact re-enactment of section 3 of the 1903 act and is now section 77-102, R. S. 1943. The 1903 act contained a provision that "The term 'personal property' includes every tangible and intangible thing which is the subject of ownership and not real property as defined in section one of this act." Laws 1903, ch. 73, s. 2, p. 389. The 1921 act further provided: "The term 'personal property' includes all property other than real property and franchises. * * * The term 'tangible property' includes all personal property possessing a physical existence, but excluding money. The term 'intangible property' includes all other personal property, including money." Laws 1921, ch. 133, art. I, ss. 3 and 4, p. 545. These are now sections 77-104 and 77-105, R. S. 1943. The Legislature further provided: "All property in this state, not expressly exempt therefrom, shall be subject to taxation, and shall be valued and

assessed at its actual value." Laws 1921, ch. 133, art. II, s. 1, p. 546. This is now section 77-201, R. S. 1943. So far as the taxability of property is concerned this was an exact re-enactment of the provisions of section 12 of the 1903 act. The exemptions provided in the 1921 act have no bearing upon the property involved in this action.

These provisions, from the beginning to the present time, show a legislative intent to tax all intangible property in this state. As a part of the 1921 act, the Legislature enacted article VIII, entitled, "Intangible Property Tax." Laws 1921, p. 582. It now appears with amendments in chapter 77, article 7, R. S. 1943. The statutes now in force provide: "Intangible property, other than notes secured by mortgages on real estate situated in this state and other than bonds of the United States, of this state or governmental subdivisions of this state, shall be separately classified, listed and taxed as follows: (1) Class 'A' shall consist of money, United States legal tender notes and other securities of the United States payable on demand, savings accounts, all bank deposits, bills of exchange, checks and drafts. (2) Class 'B' shall include all other kinds of intangible property which is not included in class 'A'." Sec. 77-701, R. S. 1943. "All intangible property in Class 'A' shall be taxed where it is assessed at the rate of two and one-half mills on the dollar of the actual value thereof." Sec. 77-702, R. S. 1943. "All intangible property in Class 'B' shall be taxed where it is assessed at the rate of eight mills on the dollar of the actual value thereof, to be assessed and collected where the owner resides." Sec. 77-703, R. S. 1943. "Every owner of intangible property and every person or corporation having intangible property in his or its custody or under his or its control as agent, trustee, executor, administrator, guardian or other representative capacity in this state, shall on or before the last Monday in May each year list the same for taxation as of April 1 next preceding. The precinct assessor shall list or aid in listing intangible property and the return for intangible property shall be made a part of the return of tangible property. A return for intangible property

shall be prepared and filed by all taxpayers of the state, whether owners of intangible property or not, but a husband and wife living together, each of whom have taxable property, may either file separate returns for intangible property or include the intangible property of both in a joint return." Sec. 77-713, R. S. 1943. "Returns shall be filed with the county assessor or, if there be no county assessor, with the clerk of the county in which the taxpayer is domiciled." Sec. 77-714, R. S. 1943. "Where a taxpayer domiciled within a county has failed to file a return for intangible property, or has omitted any intangible property from his separate intangible tax return, a notice by registered mail shall be sent to such taxpayer to appear before the Tax Commissioner or his duly authorized agent at a designated time and place, within fifteen days, in the county in which the taxpayer resides, for examination as to ownership of intangible property. The intangible property not returned or omitted shall thereupon be taxed at the rate of tangible property. In like manner any intangible property omitted from the taxpayer's separate intangible return shall be assessed at the rate for tangible property in his taxing district." Sec. 77-716, R. S. 1943. "If any foreign corporation is taxed in this state upon any tangible or intangible property, then the value of its gross shares of stock shall be ascertained by deducting from the actual value of the foreign corporation's paid-up capital stock, surplus and undivided profits, the assessed value of its property taxed in this state; * * * ." Sec. 77-722, R. S. 1943.

Intangibles held in this state for nonresident owners were taxable prior to the adoption of the 1921 act. The question then is: Did that act exempt them from taxation? Article 7, chapter 77, R. S. 1943, dealing with intangibles, is an integral part of the revenue act and must be construed in connection with other provisions of the revenue law. It is not to be construed or applied separate and apart from the balance of the act. The general provisions heretofore cited clearly include intangibles in this state within the classifications of property that shall be taxed. An intent that

intangibles in this state owned by a foreign corporation shall be taxed is clearly shown in section 77-722, R. S. 1943. There it is provided that if a foreign corporation is taxed in this state upon any tangible or intangible property, then the assessed value of its property so taxed shall be deducted from the actual value of its paid-up capital stock in ascertaining the value of its gross shares of stock. The intangible property provision of this section becomes a nullity if such property owned by a foreign corporation is nontaxable in this state.

But it is urged that there are specific provisions in the statute that exclude from taxation intangibles owned by a foreign corporation. Reliance is placed on section 77-703, R. S. 1943, stating that the tax on class B intangibles is to be assessed and collected "where the owner resides" and on section 77-714, R. S. 1943, providing that returns shall be filed with the assessor of the county "in which the taxpayer is domiciled." Reference also should be made to section 77-716, R. S. 1943, providing a procedure that "where a taxpayer domiciled within a county" fails to file a return, he is to appear "in the county in which the taxpayer resides" for examination as to his "ownership of intangible property." It is urged that the plaintiff not being domiciled in Nebraska, its intangibles held in this state accordingly are without the provisions of these statutes.

The language "where the owner resides" is not subject to the restricted interpretation which plaintiff urges. In Clay, Robinson & Co. v. Douglas County, 88 Neb. 363, 129 N. W. 548, we had for construction a statute which provided that personal property should be listed and assessed "where the owner resides." The plaintiff in that action was a partnership with its principal place of business in Chicago. The partners were all nonresidents. The partnership, however, maintained an office and transacted business in this state. We there held that plaintiff had acquired a domicile in this state for all practical purposes and was subject to taxation upon at least so much of its property as it employed and controlled within this state. This construction of the de-

cision was recognized in Massey-Harris Co. v. Douglas County, *supra.* In the opinion in the Clay, Robinson & Co. case we said: "The plaintiff's person, although intangible, is within the state of Nebraska, and, in so far as the doctrine that movables follow the person of their owner applies, it holds the credits in dispute within this state." That decision had been made before the 1920 constitutional provisions herein discussed were adopted and before the 1921 act was enacted. It further should be noted that the provisions of the statute construed in the Clay, Robinson & Co. case were substantially continued in force in the present statute. The act there construed was part of article 1, chapter 77, Comp. St. 1909. Section 2 of the act there cited is now substantially section 77-104, R. S. 1943. See, also, secs. 77-102, 77-103, and 77-105, R. S. 1943. Section 12 there cited is now section 77-201, R. S. 1943. For section 28 of the act there cited, see section 77-1201, R. S. 1943. For section 29 there cited, see sections 77-1202 and 77-1203, R. S. 1943. For section 44 there cited, see section 77-1218, R. S. 1943.

But the Legislature did not stop there in the intangible property statutes. Section 77-713, R. S. 1943 requires the listing of all intangible property in this state for taxation. The listing of the property is not limited to the owner but is required from the owner and every person or corporation having intangible property in this state in his or its custody or under his or its control as agent, trustee, executor, administrator, guardian, or other representative capacity. The return is not one limited to the owners alone, but is required from the taxpayers "whether owners of intangible property or not." These returns are to be filed where the "taxpayer is domiciled." Sec. 77-714, R. S. 1943. See, also, secs. 77-716 and 77-1229, R. S. 1943.

We are of the opinion that the Legislature used the word "taxpayer" as a broader and more inclusive term than "owner." This conclusion is substantiated directly by section 77-210, R. S. 1943, which provided that where property is assessed to any person as agent for another, or in a rep-

resentative capacity, such person shall have a lien upon the property of his principal in his possession for the taxes thereon.

It may be pointed out also that the Legislature has provided in several other instances that the situs of personal property shall control over the residence or domicile of the owner. See secs. 77-1204, 77-1205, 77-1206, 77-1210, 77-1217, 77-1218, and 77-1221, R. S. 1943.

We have heretofore pointed out that plaintiff made its return by its branch manager as "Agent" and have set out the provisions of section 77-713, R. S. 1943, and the applicability of that provision to the case at bar. The Legislature also provided that "The property of manufacturers and others in the hands of an agent shall be listed and assessed at the place where the business of such agent is carried on." Sec. 77-1206, R. S. 1943. This is a re-enactment of a provision in the 1903 act. Laws 1903, ch. 73, s. 32, p. 396. With a slight modification it was in the 1879 act. Laws 1879, p. 280. It is cited here for this reason. In Clay, Robinson & Co. v. Douglas County, *supra,* one of the statutes cited and relied upon was section 44, article I, chapter 77, Comp. St. 1909. It was enacted as section 44, chapter 73, Laws 1903. With slight modification it is now section 77-1218, R. S. 1943. The major difference in the two statutes is that section 77-1206, R. S. 1943, refers to property "in the hands of an agent," while section 77-1218, R. S. 1943 does not contain that qualification. Both statutes require that the property be listed and assessed where the business is done. By the provisions of section 77-102, R. S. 1943, the word "property" includes every kind of property, tangible or intangible, that is subject to ownership.

It may be further pointed out that section 77-1201, R. S. 1943, requires the listing of the property of manufacturers and others in the hands of an agent. This language was in the 1903 act. Laws 1903, ch. 73, s. 28, p. 395. This provision was also in the 1879 act. Laws 1879, p. 279.

These statutes sustain our conclusion that the Legislature has carried out the constitutional mandate that no property

in this state shall be exempt from taxation, except as to certain authorized items, and has implemented the general provision of the revenue act that all property in this state, not expressly exempt, shall be subject to taxation. Sec. 77-201, R. S. 1943.

We are of the opinion that the Legislature intended that all intangibles in this state (not exempt) should be returned, assessed, and taxed in Nebraska, and that without regard to whether the owner was a resident or nonresident. So construed, the act is in accord with the powers granted and withheld in the Constitution. It is the situs of such property that controls, except in those cases where the situs of the property is in one county in Nebraska and the domicile of the taxpayer in another county in Nebraska. In the latter situation the distinction made in Joyce Lumber Co. v. Anderson, 125 Neb. 886, 252 N. W. 394, is applicable.

Such we think has been the law of this state as provided in the Constitution, enacted by the Legislature and construed by this court from the early days of the state to the present.

In Jones v. Seward County, 10 Neb. 154, 4 N. W. 946, it was held that debts due were credits as then defined in the law, and were taxable. The comparable statute is now section 77-107, R. S. 1943.

In Finch v. York County, 19 Neb. 50, 26 N. W. 589, it was held that the Legislature had the power to separate the situs of personal property, whether tangible or intangible, from the domicile of the owner, and if such property in any form is within its jurisdiction, it may tax it. We there had for construction an act which provided for the taxation of intangibles "used, held, owned, or controlled by persons residing in this state." This act may be compared with the language of section 77-713, R. S. 1943, for similarity of expression. See, also, sec. 77-1201, R. S. 1943. We there held that intangibles owned by a resident of New York, but held by an agent in Nebraska, were taxable in Nebraska, and that the act did not require that the owner be a resident of the state to render the property taxable. See, also, Clay, Robinson & Co. v. Douglas County, *supra*. The statutory

provisions cited in Finch v. York County, *supra*, remain substantially in the statutes at the present time. See secs. 77-201, 77-1201, and 77-1210, R. S. 1943.

It is recognized that in Joyce Lumber Co. v. Anderson, *supra*, we held that taxation was purely a statutory matter; that the Legislature had the right to change judicial definitions; and that the return for intangibles should be filed in the county where the taxpayer was domiciled. The question there was, which county in Nebraska was entitled to tax the property. That question is not involved here. The question of whether or not it was taxable in this state was not involved. The fact that we there held a specific statute on the matter to be controlling does not require that general statutes be not considered, or relieve the property from taxation. As was stated in Jones v. Seward County, *supra*, it was not the design of the specific provisions to permit property to escape taxation altogether, but merely to avoid a conflict of jurisdiction in the collection of taxes.

As has been pointed out, we held in the early case of Finch v. York County, *supra*, that the Legislature had the power for purposes of taxation to separate the situs of personal property, whether tangible or in the form of choses in action, from the domicile of the owner, and that if such property, in any form, was within its jurisdiction, it might tax it. Again, in Aachen & Munich Fire Ins. Co. v. City of Omaha, *supra*, it was said: "The general rule is that the domicile of the owner is the situs of personal property for the purpose of taxation. This rule has its exceptions, and the legislature has the power, where personal property is actually within this state, to separate it from the domicile of a nonresident owner for the purpose of taxation. When, however, both the residence of the owner and his tangible personal property are outside of the limits of the state, no power exists in the legislature to make such property a subject of taxation."

It is clear from an examination of the act here considered that the Legislature has exercised that power in several instances and specifically with reference to the situs of such property as was taxed in Nebraska in the instant case.

Plaintiff places its reliance here principally upon the opinion in Massey-Harris Co. v. Douglas County, *supra*. First, plaintiff argues that we there held that residence and domicile of the owner is the controlling factor. Plaintiff overlooks the basic facts of that opinion. There are two. First, the property sought to be taxed was not in Nebraska. Second, the owner was not domiciled in Nebraska. What was there said with reference to the rule that the situs of intangible personal property for the purposes of taxation is the domicile of the owner, and the discussion of the nonresidence of the owner must be read in the light of the factual problem which was presented. The opinion sharply challenges attention to the fact that the rules there announced apply only to the factual situation presented. The conclusion there reached that intangible personal property not in this state, which is owned by a nonresident, is not taxable in Nebraska, is in accord with our decisions and is reaffirmed. However, it is recognized that there are statements made in the course of that opinion, when considered separate and apart from the factual situation there presented, from which conclusions may be drawn which are in conflict with the conclusions here stated. To the extent of the conflict those statements are not controlling.

Second, plaintiff would strengthen its position under the Massey-Harris case by having us go behind the fact basis that the property was not in this state. Plaintiff would have us re-examine the record in that case, and urges that there was evidence that some of the intangibles were in Nebraska. It would thereby create a factual situation comparable to its own case in part, and have us apply to property in this state a decision made with reference to property without the state. Obviously, the controlling effect of a decision must relate to the factual condition as stated in the opinion. To go behind facts so stated and materially to change the fact basis is to remove the decision as an authority.

"The doctrine of stare decisis relates only to legal principles; accordingly judicial precedents are valuable only in

so far as they state definite rules for guidance in future similar cases.

"However, the rule of stare decisis has a limited application in determining whether settled legal principles are applicable to a particular fact situation; and the positive authority of a decision is coextensive only with the facts on which it is founded, and can apply only in subsequent cases in which the issues are similar. Thus, while a decision is binding in a later case where the issues and the facts are the same or substantially the same, it is not conclusive in a later case where the facts are different, except where they present an even stronger case than the facts in the former decision; * * * ." 21 C. J. S., Courts, s. 210, p. 383.

Finally, plaintiff urges that we should take judicial notice of the fact that there was introduced in the 1943 session of the Legislature LB 273 relating to revenue and taxation, to provide that intangible property, belonging to a nonresident but having a business situs in this state, shall be taxed in the same manner and at the same rate as other intangible property, the tax to be assessed and collected where the nonresident maintains its principal place of business within the state. Plaintiff states that this bill was indefinitely postponed by the revenue committee and its action was final; that no attempt was made to amend the statute in the 1945 session; and that hence it will be assumed the interpretation which it places upon the Massey-Harris case expresses the legislative intent. We shall not undertake an analysis of the proposed bill. Plaintiff overlooks some important facts and dates. LB 273 was introduced on January 29, 1943, and was, as plaintiff states, indefinitely postponed by the revenue committee on March 26, 1943. Legislative Journal 1943, p. 807. However, on April 14, 1943, the Legislature refused to concur in the committee report and placed the bill on general file by a vote of 32 to 0. Legislative Journal 1943, p. 991. Thereafter on April 30, 1943, on motion of the sifting committee, the bill was placed on the calendar for consideration. Legislative Journal 1943, p. 1194. Finally, on May 19, 1943, all bills except two on general

file were indefinitely postponed by the Legislature. Legislative Journal 1943, p. 1519. All this happened before the Massey-Harris decision was filed by this court on July 2, 1943. It can hardly be said that the Legislature acted with reference to that decision. Further, it is to be noted that certified copy of the first notice of appeal in the instant cases was filed in this court on February 14, 1945, during the early days of the 1945 legislative session. We see no merit in this contention of plaintiff.

We reach the inescapable conclusion that intangible property such as is involved in this action has been and now is liable to taxation in Nebraska.

The judgment of the district court is reversed and the cause is remanded with directions to dismiss.

REVERSED.

Wenke, J., participating on briefs.

WENKE, J., concurring in the result.

I concur with the conclusion arrived at in the majority opinion both for the reason that the taxpayer followed the wrong procedure and that the facts of the case make the intangible property here involved taxable under the provisions of section 77-713, R. S. 1943.

However, I do not agree with the opinion insofar as it holds that under the provisions of our Constitution and the laws of this state that all intangibles in this state should be returned, assessed, and taxed in Nebraska without regard to whether the owner is a nonresident, nor do I find any decision of this court cited in the opinion that so holds.

This court has always held that the taxable situs of intangibles is the residence of the owner. In the early case of Finch v. York County, 19 Neb. 50, 26 N. W. 589, this court announced this rule in the following language: "The power of the state to tax all property within its own limits must be conceded. For the purposes of taxation and the collection of revenue the state possesses all the attributes of sovereignty, and its power to tax property within its borders is ample and unlimited. But that power is limited to the persons and property within its jurisdiction. Ordinarily the

situs of moneys and credits follow the domicile of the owner, and if he lives in one state, and has money owing to him from citizens or residents of another state, the state of his residence, only, has the power to tax such credits. And it has been held that where the credits were represented by notes and mortgages, and such notes and mortgages were not in his immediate possession, but were deposited in the state where the debtor resided for payment or collection, yet they were not taxable there for the reason that the notes and mortgages are not the debt itself, but the evidence of it, and the debt followed the owner. People v. Eastman, 25 Cal., 603. Appeal Tax Ct. v. Patterson, 50 Md., 368. Latrobe v. Baltimore, 19 Md., 13. The tax is not on the money, the land on which the security is taken, nor upon the paper upon which the promise and security are written, but upon the chose in action, or right to collect the debt. State v. Earl, 1 Nev., 394. Desty on Taxation, 330. Cooley on Taxation, 43." This principle is again restated in Nye-Schneider-Fowler Co. v. Boone County, 99 Neb. 383, 156 N. W. 773, as follows: "It is elementary that 'movables follow the person,' in the absence of statutes providing otherwise, and that the credits of plaintiff would be assessable at the domicile of the corporation but for the statute." In Massey-Harris Co. v. Douglas County, 143 Neb. 547, 10 N. W. 2d 346, we restated the same principle as follows: " 'The general rule is that the situs of intangible personal property for the purposes of taxation is the domicile of the owner. This rule is usually bottomed on the legal maxim, *"mobilia sequuntur personam,"* i. e., "moveables follow the person;" or, as sometimes stated, the situs of personal property is the domicile of the owner.' Crane Co. v. City Council of the City of Des Moines, 208 Ia. 164, 225 N. W. 344, 76 A. L. R. 801." See Aachen & Munich Fire Ins. Co. v. City of Omaha, 72 Neb. 518, 101 N. W. 3.

There is no question but what the taxable situs of such property, when within this state, may be separated from that of the nonresident owner. As stated in Finch v. York County, *supra:* "But the power of the legislature to separ-

ate, for purposes of taxation, the situs of personal property, whether of a tangible nature, or in the form of choses in action, from the domicile of the owner is unquestioned, and if such property, in any form, is within its jurisdiction it may tax it. Swallow v. Thomas, 15 Kan., 68. Tappan v. Bank, 19 Wall., 490. Griffith v. Carter, 8 Kan., 565." This is again stated in Aachen & Munich Fire Ins. Co. v. City of Omaha, *supra,* as follows: "The general rule is that the domicile of the owner is the situs of personal property for the purpose of taxation. This rule has its exceptions and the legislature has the power, where personal property is actually within this state, to separate it from the domicile of a nonresident owner for the purpose of taxation."

It is therefore clear that the question here involved is not one of exemption or release from taxation but rather one of inclusion. In the absence of either constitutional provision or statutory enactment expressly separating the taxable situs of intangibles from that of nonresident owners such intangibles in this state would not be subject to taxation. In the case of Finch v. York County, *supra,* where the intangibles of a nonresident were held taxable under a statute that was applicable to the facts of that case because such property was held and controlled by a resident agent, we stated: "By the foregoing it will be seen that a distinction must be maintained between cases of the kind at bar and that class of cases where the property taxed is not in the hands of an agent, and has no situs apart from the residence of the owner. Thus in Hunter v. Supervisors, 33 Iowa, 376, it was held that a resident of that state who had deposited for safe keeping in Illinois promissory notes which he had never brought with him to Iowa, was subject to taxation in Iowa, but the court held that a different rule would prevail if he had conferred authority upon some one as his agent to loan, manage, receive, and collect the same for him, citing The People v. Gardner, *supra.*" And in Massey-Harris Co. v. Douglas County, *supra,* we stated: "This principle of *mobilia sequuntur personam* as to intangible personal property has been the rule in force for so

long in this state that if it is to be changed or modified as to taxation it should be by the legislature and then only by provisions plainly written in the statute, for the power of taxing this class of property in the hands of nonresidents must, if it exists, be clearly set forth."

This court has consistently held, and correctly so, that the taxable situs of intangibles in this state owned by non-residents is the domicile or residence of the owner. That the state has the power to separate the taxable situs of such intangibles from that of the nonresident owner and make them taxable here is also without question but in the absence of the exercise of such power such intangibles are not taxable here. While the Legislature has enacted legislation which is applicable to certain fact situations and which has the effect of separating the taxable situs of intangibles within this state from that of the nonresident owner, such as in the case at bar where section 77-713, R. S. 1943, applies, however, an examination of all the constitutional and statutory provisions cited in the majority opinion or that I have been able to find that are on the subject, none have any provision that has the effect of separating the taxable situs of such intangibles as a whole from that of the nonresident owner. And this seems logical because if the Legislature had passed an act that was generally applicable to all intangibles in this state that are owned by nonresidents then it would have been unnecessary and illogical for them to have enacted the sections referred to in the majority opinion which are applicable to intangibles in this state of nonresidents under the particular situation as therein set forth.

While it may be desirable to include, for the purposes of taxation, all intangibles in this state that are owned by non-residents, however, that is a matter of legislative and not judicial concern. Until the state makes specific provisions for that purpose, I am not willing to do so by judicial opinion.