ROBERT O. REHKOPF ET AL., APPELLEES AND CROSS-APPEL-
LANTS, V. BOARD OF EQUALIZATION OF DOUGLAS COUNTY,
NEBRASKA, APPELLANT AND CROSS-APPELLEE.
HARRY E. JUDD, APPELLEE AND CROSS-APPELLANT, V. BOARD
OF EQUALIZATION OF DOUGLAS COUNTY, NEBRASKA,
APPELLANT AND CROSS-APPELLEE.

141 N. W. 2d 462

Filed April 8, 1966.   No. 36102.

Clarence A. H. Meyer, Attorney General, Homer G. Hamilton, Donald L. Knowles, and William F. Ryan, for appellant.

Edson Smith and Swarr, May, Royce, Smith, Andersen & Ross, for appellees.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, BROWER, SMITH, and McCOWN, JJ.

BROWER, J.

These cases involve the valuation of shares of common stock for intangible tax purposes in Frito-Lay, Inc., a foreign corporation organized under the laws of the State of Texas and not domesticated in Nebraska.

The appellees Robert O. Rehkopf and Merle S. Rehkopf are husband and wife, and each owned in their own right stock in the corporation mentioned in the years 1962 and 1963. The appellee Harry E. Judd owned stock therein in the year 1963. All three are residents of Douglas County, Nebraska. The Rehkopfs filed protests with the appellant Board of Equalization of Douglas County, Nebraska, for each of these years and Judd for the year 1963 alone. In each case the taxpayer's complaint was dismissed and they appealed to the district court where the three cases were consolidated for trial. In this court they were docketed together as one appeal.

The facts are all established by the pleadings and the stipulations of the parties.

Prior to 1920, the Constitution of Nebraska made no distinction between tangible and intangible property for the purpose of taxation. See International Harvester Co. v. County of Douglas, 146 Neb. 555, 20 N. W. 2d 620. In 1920, Article VIII, section 1, of the Constitution of Nebraska, was amended to read as follows: "The necessary revenue of the state and its governmental subdivi-

sions shall be raised by taxation in such manner as the Legislature may direct; but taxes shall be levied by valuation uniformly and proportionately upon all tangible property and franchises, and taxes uniform as to class may be levied by valuation upon all other property. Taxes, other than property taxes, may be authorized by law. Existing revenue laws shall continue in effect until changed by the Legislature." This section of the Constitution was again amended in 1952, 1954, 1960, and 1964. None of these amendments affect the determination of these cases.

Following the 1920 amendment to the Constitution, legislation was enacted which divided intangible property into two general classes with respect to the rate of tax applicable thereto. This legislation, which now appears as sections 77-701, 77-702, and 77-703, R. R. S. 1943, provides generally for a tax at the rate of 2½ mills on the dollar of the actual value of money, book accounts, savings accounts, bank deposits, bills of exchange, checks, and drafts, and 4 mills on the dollar of the actual value of all other kinds of intangible property.

Shares of stock have also been classified with respect to the method of computing their value for assessment purposes. Section 77-706, R. S. Supp., 1963, which relates to the valuation of shares of stock in domestic corporations and certain domesticated corporations, provides as follows: "The value of the shares of stock of corporations, organized or domesticated under the laws of this state, shall be determined for the purpose of taxation by deducting from the actual value of the paid-up capital stock, surplus, and undivided profits of such corporation available for stock dividends, the actual value of the property of the corporation, both intangible and tangible, listed and taxed in this state, the actual value of the property of the corporation outside of this state, the actual value of bonds or other obligations issued by the United States of America or any of its agencies or instrumentalities, or by the State of Nebraska or any

of its municipal or political subdivisions, and the actual value of the shares of stock of other Nebraska corporations, domestic or domesticated, owned by the corporation; Provided, this section shall not apply to domesticated corporations subject to assessment and taxation under the provisions of Chapter 77, article 6, * * *. The corporation shall furnish the county assessor or Tax Commissioner or his authorized representative such proof of the value of its property outside of the state as they may require. The corporation shall pay the tax assessed upon its stock or shares, and shall have a lien thereon for the tax so paid."

Section 77-722, R. R. S. 1943, which relates to the valuation of shares of stock in foreign corporations, provides as follows: "If any foreign corporation is taxed in this state upon any tangible or intangible property, then the value of its gross shares of stock shall be ascertained by deducting from the actual value of the foreign corporation's paid-up capital stock, surplus, and undivided profits, the actual value of its property taxed in this state; and thereafter the taxing officials of counties, in which shares of stock of any such foreign corporation may be owned, shall determine, in relation to such net value of the gross shares of stock, the value for assessment and taxation purposes of any such individual shares of stock in the hands of the resident owners."

Sections 77-706, R. S. Supp., 1963, and 77-722, R. R. S. 1943, both contemplate the valuation of shares of stock upon the basis of book value, less the deductions set out in the respective sections.

The appellant board of equalization contends that shares of common stock in Frito-Lay, Inc., should be valued at $42.62 per share for 1962 and $29.75 per share in 1963, less the value of certain property of the corporation which was taxed in Nebraska during those years. The appellant admits that section 77-722, R. R. S. 1943, is applicable, but contends that the market value of the stock rather than its book value should be used as the

basis for its valuation. This contention ignores the plain language of section 77-722, R. R. S. 1943, which refers to the value of the corporation's "paid-up capital stock, surplus, and undivided profits."

Where the words of a statute are plain, direct, and unambiguous, no interpretation is needed to ascertain the meaning. Bachus v. Swanson, 179 Neb. 1, 136 N. W. 2d 189.

The district court held that the shares of common stock in Frito-Lay, Inc., should be valued at book value which the record shows was $6.77 per share in 1962 and $8.24 per share in 1963. This is the proper construction of section 77-722, R. R. S. 1943, although it results in the property being valued at a fraction of its actual value or fair market value. This disposes of the issues raised by the appellant's appeal.

The appellee taxpayers cross-appealed from the judgment of the district court. They contend that shares of stock in corporations constitute a single class of property; that the Legislature is without power to classify the stock of foreign corporations separately for valuation for taxation; and that such classification is arbitrary, unreasonable, and an unconstitutional discrimination.

An examination of section 77-706, R. S. Supp., 1963, at once discloses that the deductions there authorized to be made from the actual value of the paid-up capital stock, surplus, and undivided profits available for stock dividends greatly exceed those permitted to foreign corporations under section 77-722, R. R. S. 1943. It is shown in the record that the evaluation of shares in domestic and domesticated corporations under section 77-706, R. S. Supp., 1963, results in a zero value in most instances. Of the 1,932 domestic and domesticated corporations which filed an information return or schedule with the county assessor of Douglas County, Nebraska, upon a form authorized by the Tax Commissioner known as "Form 4," 1,786 had a zero value for tax purposes and

the remainder of them had a minimal value for intangible tax purposes. It is also shown that if the common stock of Frito-Lay, Inc., were valued by the method set out in section 77-706, R. S. Supp., 1963, its common shares would have a zero value also. On the other hand, it is shown that by applying the method prescribed in section 77-722, R. R. S. 1943, a substantial value will result in nearly all instances.

The question presented by the cross-appeal is whether it is within the power of the Legislature to classify the stock of a foreign corporation in the hands of a stockholder separately and apart from other capital stock.

The tax imposed upon the shares of stock is a property tax upon the owner of the shares and not a tax upon the corporation. Nemaha County Bank v. County Board, 103 Neb. 53, 170 N. W. 500; Peters Trust Co. v. Douglas County, 106 Neb. 877, 184 N. W. 812; Moeller, McPherrin & Judd v. Smith, 127 Neb. 424, 255 N. W. 551. The property of the corporation which is in Nebraska, both tangible and intangible, is taxed to the corporation. The shares of stock in the corporation, which are the property of the shareholders, are taxed to them. A domestic or domesticated corporation is the agent for its stockholders for the purpose of payment of any tax which may be due upon its shares of stock. Peter Kiewit Sons' Co. v. County of Douglas, 161 Neb. 93, 72 N. W. 2d 415.

Article VIII, section 1, of the Constitution of Nebraska, already quoted, after providing for taxes to be levied by valuation uniformly and proportionately on all tangible property and franchises, provides: "* * * and taxes uniform as to class may be levied by valuation upon all other property." This court has said many times the Legislature may make a reasonable classification of persons, corporations, and property for purposes of legislation concerning them, but the classification must rest upon real differences in situations and circumstances surrounding the members of the class, relative to the

subject of the legislation, which render appropriate its enactment; and to be valid the law must operate uniformly and alike upon every member of the class so designated. Creigh v. Larsen, 171 Neb. 317, 106 N. W. 2d 187.

The trial court found the provisions of section 77-722, R. R. S. 1943, did not violate the Constitution of this state or of the United States. Its opinion indicates it based its judgment in this respect on the decision of this court in Bute v. Hamilton County, 113 Neb. 230, 202 N. W. 616. The Bute case was decided in 1925 prior to the enactment of what is now section 77-722, R. R. S. 1943. At that time the statute did not prescribe a method for the valuation of shares of stock in a foreign corporation. What is now section 77-201, R. S. Supp., 1963, then appeared as section 5820, Comp. St. 1922, and provided: "All property in this state, not expressly exempt therefrom, shall be subject to taxation, and shall be valued and assessed at its actual value. 'Actual value,' as used in this act, shall mean its value in the market in the ordinary course of trade." The Bute case held that shares of stock in a foreign corporation should be valued in accordance with section 5820, Comp. St. 1922; and that section 5884, Comp. St. 1922, which as amended now appears as section 77-706, R. S. Supp., 1963, was not applicable to shares of stock in a foreign corporation. The opinion states: "The Constitution, as it stood before the amendment of 1920, of itself supplied the classification of property for taxation purposes; the amendment vests this power in the legislature. The classifying of stock in foreign corporations different from that in domestic corporations, for assessment, does not contravene the constitutional provision for uniformity. In this conclusion we are supported by Gaar, Scott & Co. v. Shannon, 52 Tex. Civ. App. 634; Ducat v. City of Chicago, 48 Ill. 172; Hughes v. City of Cairo, 92 Ill. 339; Bacon v. Board of State Tax Commissioners,

126 Mich. 22; Hunter v. Wells Fargo Express Co., 134 Ia. (La.) 358.

"Appellee urges that appellant abandoned his contention of double taxation on this appeal, relied upon in the lower court, because the stock in question has been assessed in West Virginia. Whether he did nor not, the contention is without merit. Dwight v. Mayor and Aldermen of City of Boston, 94 Mass. 316; Bradley v. Bauder, 36 Ohio St. 28; Judy v. Beckwith, 137 Ia. 24."

The Bute case has neither been overruled nor modified and has been the rule of law stated by this court for 40 years. Within less than a month after the decision of this court in the cited case the Legislature enacted Laws 1925, chapter 173, page 454, with the emergency clause, providing for filing of statements by foreign corporations and prescribing the method of ascertaining the value of the stock of such corporations. The statute so enacted has been subsequently amended and, as amended, presently appears as sections 77-721, R. S. Supp., 1963, and 77-722, R. R. S. 1943. It is apparent the Legislature of this state has relied, during the entire period, on the decision of this court as to the constitutionality of such legislation.

It is now suggested that the Bute case was wrongly decided and appellees contend that there was and is no reasonable basis for the classification of the shares of stock of foreign corporations differently than those of a domestic or domesticated one. It is claimed that no real difference in the situation and circumstances of the property or the owners thereof exist which render the separate classification appropriate.

There are, however, cases from many jurisdictions which have adopted the same rule as to classification enunciated in the Bute case. Some of them have spelled out the reasons therefor at considerable length. In the case of Georgia Railroad & Banking Co. v. Wright, 125 Ga. 589, 54 S. E. 52, the Supreme Court of Georgia had under consideration very similar statutes involving

practically the same constitutional provisions. It gives a clear and complete statement of the underlying difference which permits such a classification. "A single tax upon any species of property will satisfy the demands of the constitution. A tax law will not be construed to tax the same property twice, unless such a conclusion is constrained either by the express provisions of the law or by necessary implication. Gray on Lim. Tax. Power, § 1366. Many, if not all, laws imposing taxes upon property contain provisions which in effect tax some species of property more than once. There are in the tax laws of this State instances where the thing which gives value is twice taxed. Wherever there is the imposition of a tax upon one who holds the tangible article of inherent value, as well as upon another who holds merely the symbol which derives its value solely from the tangible article, the same property is twice taxed. The property of a corporation is that which gives value to its shares. If a tax is levied upon the property in the hands of the corporation, and a tax is levied upon the value of the shares in the hands of the shareholders, that which gives value to the holdings of the corporation and to the shares of the shareholder is unquestionably subjected to a double burden. While shares of stock are property in the hands of the shareholder, they have no inherent value, and derive their sole value from the tangible or other property which is owned by the corporation. The taxation of both the property of a corporation in the hands of the corporation, and the value of the shares in the hands of the shareholders, is manifestly an instance where the same property is twice taxed. It is double taxation in a sense, but not that species of double taxation which would be void. It is permissible, but not compulsory. Gray on Lim. Tax. Power, § 1372 et seq.; Commonwealth v. Fall Brook Co., 156 Pa. St. 488 (26 Atl. 107); Commonwealth v. Lehigh Co., 162 Pa. St. 603 (29 Atl. 664). * * *

"It may be that double taxation results so far as those

interested in the property are concerned, the property of the corporation being taxed in one jurisdiction and shares of stock in another jurisdiction. * * * It would be more than idle to contend in this day that one who owns shares of stock in a corporation is not an owner of property. It is true that the value of the property depends largely, if not entirely, upon a fiction of the law. But every holder of a share of stock in any corporation is a property owner. Shares of stock are bought and sold. They are bequeathed to legatees and descend to heirs. They have all the qualities of every other character of property, except that they have no inherent value. The value of the shares depends upon the value of the property of the corporation which issues them. Their situs for taxation is within limits subject to legislative declaration. The legislature may have even the right under our constitution to declare that the situs for taxation of shares of foreign stock held by a resident of Georgia is not in Georgia, but they clearly have the power to declare that shares of such stock have a situs for taxation in this State. * * *

"A shareholder in a domestic corporation whose property is taxed in the hands of the corporation by the State is not in the same class with the shareholder in a foreign corporation whose property is not taxed and can not be taxed by the taxing authority of the State. Therefore a tax law levying a tax upon the market value of shares in foreign corporations held by citizens of this State, and not levying such a tax upon shares of stock in a corporation in this State where the corporation has paid the full amount of tax upon its property, does not violate the rule of uniformity in our own constitution; nor does it violate that provision in the State constitution which says that protection to property shall be impartial and complete; nor does it violate that provision in the fourteenth amendment to the constitution of the United States which declares that no State shall deny to any person within its jurisdiction the equal protection

of the laws. Kidd v. Alabama, 188 U. S. 730; Wright v. Railroad Co., 195 U. S. 219; Missouri v. Dockery, 191 U. S. 165." See, also, Coca-Cola Company v. Atlanta, 152 Ga. 558, 110 S. E. 730, 23 A. L. R. 1339, as to which certiorari to the Supreme Court of the United States was denied, 259 U. S. 581, 42 S. Ct. 585, 66 L. Ed. 1074.

The same reasoning is set forth and the same conclusions reached in State v. Nelson, 107 Minn. 319, 119 N. W. 1058; Judy v. Beckwith, 137 Iowa 24, 114 N. W. 565, 15 L. R. A. N. S. 142, 15 Ann. Cas. 890; and Bacon v. Board of State Tax Commissioners, 126 Mich. 22, 85 N. W. 307, 60 L. R. A. 321, 86 Am. S. R. 524. In the latter case the court said: "The State has said, in effect, to its citizens, 'If you invest your property in corporations, you shall be taxed upon the shares, except where the property of the corporation is taxed to the corporation by this State.' We may doubt the abstract justice of this; but we believe the State has the power to tax the shares of residents in foreign corporations, and that this power is not affected by the action of another State in imposing taxes upon the corporations. Michigan owes much to the investment of foreign money in her corporations which she taxes, and it is probably to her interest that moneys so invested be not taxed again elsewhere; but she is powerless to prevent it, though it goes without saying that the property, in effect, is taxed twice. There are the questions of policy and abstract justice involved, both protesting against double taxation; but the legislatures of the States are judges of both policy and propriety, so long as the constitutions have not forbidden it, and the weight of authority supports the claim that, in the absence of clear and express prohibition, they have not."

In Kidd v. Alabama, 188 U. S. 730, 23 S. Ct. 401, 47 L. Ed. 669, it was held that a statute of Alabama taxing stocks of railroads incorporated in other states held by citizens of Alabama is not unconstitutional under the Fourteenth Amendment to the Constitution of the United

States because no similar tax is imposed on the stock of domestic railroads or of foreign railroads doing business in Alabama; the property of the former class of railroads being untaxed, and that of the latter two classes being taxed by the state. In that case, Justice Holmes said: "We say that the State in taxing stock may take into account the fact that the property and franchises of the corporation are untaxed, whereas in other cases they are taxed; and we say untaxed, because they are not taxed by the State in question. The real grievance in a case like the present is that, more than probably, they are taxed elsewhere. But with that the State of Alabama is not concerned. No doubt it would be a great advantage to the country and to the individual States if principles of taxation could be agreed upon which did not conflict with each other, and a common scheme could be adopted by which taxation of substantially the same property in two jurisdictions could be avoided. But the Constitution of the United States does not go so far. Coe v. Errol, 116 U. S. 517, 524; Knowlton v. Moore, 178 U. S. 41; Dyer v. Osborne, 11 R. I. 321, 327; Cooley, Taxation, 2d ed. 221, n. One aspect of the problem was touched in the case of Blackstone v. Miller, at the present term. 188 U. S. 187. The State of Alabama is not bound to make its laws harmonize in principle with those of other States. If property is untaxed by its laws, then for the purpose of its laws the property is not taxed at all. * * * Practically the law before us, in the broad aspect in which alone we are asked to consider it, seems to us to work out substantial justice and equality, if we leave on one side the probable taxation by other States, which does not affect the State of Alabama's rights." See, also, with respect to the United States Constitution, Wright v. Louisville & Nashville R.R. Co., 195 U. S. 219, 25 S. Ct. 16, 49 L. Ed. 167; Hawley v. Malden, 232 U. S. 1, 34 S. Ct. 201, 58 L. Ed. 477, Ann. Cas. 1916C 842; Wright v. Central of Georgia Ry. Co., 236 U. S. 674, 35 S. Ct. 471, 59 L. Ed. 781.

The rules referred to in the cases hitherto discussed are set forth in the text at 51 Am. Jur., Taxation, § 489, p. 498, and § 583, p. 570, and many cases are there cited. The text refers to the annotation beginning at 43 A. L. R. 686, covering "Shares owned by a resident in a foreign corporation as subject of property tax." In the annotation the cases are grouped with respect to various constitutional provisions. At page 691 are cases holding: "Taxing shares of foreign corporations when owned by inhabitants of the state does not deny the owners the equal protection of the laws, because, in the case of domestic corporations, it is the property, and not the shares, which is taxed." On page 693 appear those holding: "The imposition of a property tax upon the shares of a foreign corporation, which are also taxed in the foreign state, owned by a domestic corporation (or resident of the state), does not conflict with the provision of the Federal Constitution providing for the giving of full faith and credit to the public acts of other states." On page 707 appear others stating: "The taxation of shares of stock held by residents of the state in foreign corporations, while exempting from direct taxation shares in domestic manufacturing corporations whose property is taxed by the state, does not violate the provisions of the state Constitution to the effect that all laws must have a uniform operation, and that no citizen shall be granted privileges or immunities not open to all citizens on the same terms, and that the property of all corporations for pecuniary profit shall be subject to taxation the same as that of individuals." A subsequent annotation on the same subject is contained in 48 A. L. R. 997. A review of the many cases cited in the two annotations makes clear that the majority of all the cases are in accord with the rules in the decision of this court in Bute v. Hamilton County, *supra.* Indeed, there appears very little authority to the contrary.

In 84 C. J. S., Taxation, § 36, p. 120, it is stated: "The power to classify for tax purposes is primarily in

the legislature, and not in the courts, and its laws should not be declared invalid unless it clearly appears that they transgress the constitution. So a classification not based on an unreasonable distinction will not be interfered with by the courts, nor will a classification be declared void as unreasonable unless plainly and grossly oppressive and unequal or contrary to common right; and it has been stated that no classification or method of computing taxes is to be held invalid by the courts unless it precludes the assumption that it was made in the exercise of legislative judgment and discretion. It is not necessary that the court perceive the precise legislative reason for the classification; and the legislature is not required to preamble or label its classification for tax purposes, or disclose the principles on which they are made, but it is sufficient if the court, on review, may find them supported by justifiable reasoning."

Here the court is not concerned with the justice, wisdom, or appropriateness of the statute before us. That is the prerogative of the Legislature and not the office of the court. We are asked to overrule Bute v. Hamilton County, *supra,* decided by this court more than 40 years ago, on the basis of which decision the Legislature of this state has acted and relied upon during that period. Moreover, we are urged to do so although that case is in agreement with the decisions of the courts of last resort in most of the other states, which have had the question before them, and of those of the United States.

The appellees in their brief on cross-appeal call our attention to certain cases of this court where other and different statutes classifying property for taxation were declared to have violated the constitutional requirement of uniformity as to class. These statutes and the classifications contained therein are not before us. They do not relate to the separate classification of the stock of foreign corporations and the stock of domestic or domesticated corporations. The case of Bute v. Hamilton County, *supra,* does and in so doing agrees with the

majority of the decisions in other states. This opinion would be unnecessarily extended if those cases having no bearing upon the classification before us were discussed.

We conclude that the errors assigned by the cross-appellants cannot be sustained. It follows that the judgment of the trial court should be and is affirmed.

AFFIRMED.

SPENCER, BOSLAUGH, and SMITH, JJ., dissenting.

We agree that the Nebraska intangible tax upon shares of stock is a property tax upon the owners of the shares and not a tax upon the corporation; that sections 77-706, R. S. Supp., 1963, and 77-722, R. R. S. 1943, provide for the valuation of shares of stock upon the basis of book value, less certain deductions; and that the 1952, 1954, 1960, and 1964 amendments to Article VIII, section 1, of the Constitution of Nebraska, do not affect the determination of these cases. We are unable to agree that section 77-722, R. R. S. 1943, is a valid legislative enactment.

The 1920 amendment to Article VIII, section 1, of the Constitution, authorized taxes uniform as to class to be "levied by valuation" upon intangible property. Valuation should mean actual value or some part thereof. The tax which has been imposed is upon the "actual value" of the shares. § 77-703, R. R. S. 1943. However, both sections 77-706, R. S. Supp., 1963, and 77-722, R. R. S. 1943, provide for a method of valuation by book value. Book value usually has little relation to actual value as is well demonstrated by the record in this case. Where the authority to tax is restricted to a levy by valuation, we believe that it is beyond the power of the Legislature to prescribe artificial methods of valuation.

Sections 77-706, R. S. Supp., 1963, and 77-722, R. R. S. 1943, classify shares of stock for the purpose of valuation according to whether the corporation issuing the stock was a domestic, domesticated, or foreign corporation. Both sections permit the deduction of the actual

value of the property of the corporation in this state. Section 77-706, R. S. Supp., 1963, permits shareholders of domestic and domesticated corporations to deduct the value of all property outside the state; bonds or other obligations issued by the United States of America, its agencies or instrumentalities, or by the state or any municipal or political subdivision; and the value of shares of stock in other domestic or domesticated corporations. As pointed out in the majority opinion, this results in a zero value for the shares of stock in most domestic or domesticated corporations. The stockholders of foreign corporations are not permitted to make these deductions in computing the value of their shares.

So far as the individual shareholder is concerned, we are unable to perceive the real or substantial difference in situation or circumstances between an investment in the shares of a domestic corporation, or particularly the shares of a domesticated corporation, and the shares of a foreign corporation, which will justify a substantial value for taxation upon the shares of stock in the foreign corporation and a zero value for the other shares.

The justification urged for the discrimination against stockholders of a foreign corporation seems to be based upon a theory that the property of domestic and domesticated corporations is located within the state and taxed to the corporations. The assumption that most of the property of domesticated corporations is located within the state and taxed directly to them is not borne out by the record in this case and is unwarranted.

The classification of the stock of domestic and domesticated corporations separate from that of foreign corporations is supposed to alleviate double taxation. Double taxation of corporation property in this state is eliminated by the deduction of the value of all corporation property within the state. The deduction of the value of corporation property outside of the state, which is allowed to the stockholders of domestic and domesticated corporations, is totally unrelated to the double

taxation of corporation property by this state.

In a series of cases, commencing at about the time of the decision in Bute v. Hamilton County, 113 Neb. 230, 202 N. W. 616, and continuing up to this time, this court has insisted that the shares of stock in banking corporations be valued upon the same basis as shares of stock in domestic corporations. It seems to us that the principles involved in those cases are applicable here.